Grafton
No. 2008-272

THE STATE OF NEW HAMPSHIRE

v.

JOSHUA SHEPARD

Argued: March 17, 2009
Opinion Issued: May 29, 2009

*Kelly A. Ayotte*, attorney general (*Michael S. Lewis*, assistant attorney general, on the brief and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Joshua Shepard, appeals his conviction for three counts of negligent homicide and one count of vehicular assault following a jury trial. *See* RSA 630:3, I (2007); RSA 265:79-a (2004). He argues that the Superior Court (*O'Neill*, J.) erred when it denied his motions to dismiss the indictments against him and for judgment notwithstanding the verdict (JNOV). We reverse.

The jury could have found the following facts, viewed in the light most favorable to the State. The defendant's convictions stem from a 2006 motor vehicle accident that seriously injured him and another motorist and killed three others. The accident happened at approximately noon on the first day of Laconia's Motorcycle Week, Sunday, June 11, 2006, which was a partly cloudy, relatively warm and comfortable day, with good visibility. The defendant was driving his car eastbound on Route 49 from Interstate 93 to his job in Waterville Valley, a road that he had traveled hundreds of times before. The accident occurred in Thornton, where Route 49 is a narrow, winding two-lane highway populated by residences and businesses. Traffic traveling in the opposite direction included, in order, a car driven by Carleton Vaughan, a motorcycle carrying Gary and Joyce Varden, a motorcycle carrying Rick and Claudia Huffman, and a car containing Christopher and Kristin Caplice. The motorcycles were traveling behind Vaughan's vehicle in staggered positions with the Varden motorcycle

positioned closer to the double yellow line and the Huffman motorcycle positioned fifty feet behind the Varden motorcycle, closer to the center of the westbound lane.

Just before the collision, the defendant's car headed toward the center double yellow line in the direction of Vaughan's car. Vaughan steered his car to the right to avoid the defendant. The defendant's car continued across the double yellow line and was a quarter to halfway into the lane of oncoming traffic when it hit the Varden motorcycle in the westbound lane. The Varden motorcycle then collided with the Huffman motorcycle. The Vardens died at the scene. The Huffmans were transported to a hospital where Claudia Huffman later died. Both Rick Huffman and the defendant suffered serious bodily injuries.

At most, the defendant's car strayed over the yellow line for approximately two seconds before hitting the Varden motorcycle. There was no evidence that the defendant took any evasive action to avoid the motorcycles after he drove into their lane. There was no evidence that any of the vehicles involved were speeding. Nor was there any evidence that the defendant was under the influence of alcohol or drugs at the time.

The grand jury returned three indictments alleging that the defendant negligently caused the death of Gary Varden, Joyce Varden and Claudia Huffman, respectively. The grand jury also returned a fourth indictment alleging that the defendant negligently caused serious bodily injury to Rick Huffman. At the conclusion of the State's case, the defendant moved unsuccessfully to dismiss the indictments on the ground that the State had failed to prove beyond a reasonable doubt that his conduct was criminally negligent. *See* RSA 630:3, I; *see also State v. Rollins-Ercolino*, 149 N.H. 336, 341 (2003) (holding that vehicular assault statute, RSA 265:79-a, requires proof of criminal negligence). After the jury returned guilty verdicts on all charged offenses, the defendant moved for JNOV on the grounds that the evidence was insufficient to support the verdicts and that the verdicts were against the weight of the evidence. The trial court denied the motion on both grounds, and this appeal followed.

The defendant first argues that the trial court erred when it denied his motions to dismiss the indictments at the close of the State's case and to set aside the jury's verdict based upon sufficiency of the evidence. He contends that the evidence was insufficient to establish that his conduct was criminally negligent. "Because the defendant chose to present a case after unsuccessfully moving to dismiss, however, the issue on appeal as to both motions is the sufficiency of the evidence and we review the entire trial record to make that determination." *State v. Hull*, 149 N.H. 706, 711-12 (2003).

To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.*

■ To have convicted the defendant either of negligent homicide or vehicular assault, the jury must have found, beyond a reasonable doubt, that he acted negligently as defined in RSA 626:2, II(d) (2004). *See* RSA 630:3, I ("A person is guilty of a class B felony when he causes the death of another negligently"); *Rollins-Ercolino*, 149 N.H. at 341. Under RSA 626:2, II(d), a person acts "negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(d) specifies that "[t]he risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation." Whether the defendant failed to become aware of a "substantial and unjustifiable risk" is determined by an objective test, not by reference to the defendant's subjective perception. *State v. Ebinger*, 135 N.H. 264, 265-66 (1992).

■ In the instant matter, the risk at issue for the negligent homicide charges is the risk of death, *see* RSA 630:3, I; the risk at issue for the vehicular assault charge is the risk of serious bodily injury, *see* RSA 265:79-a. Not every act of carelessness that results in a death or serious bodily injury entails criminal negligence, however, and a person charged with criminal negligence may not be convicted on evidence that establishes only ordinary negligence. *See State v. Littlefield*, 152 N.H. 331, 350 (2005). "[T]he carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence, and . . . its seriousness [must] be apparent to anyone who shares the community's general sense of right and wrong." *Id.* at 351 (quotation and ellipsis omitted). Criminal negligence requires not only the failure to perceive a more than ordinary risk, "but also some serious blameworthiness in the conduct that caused it." *Id.* (quotation omitted). Accordingly, "unless a defendant has engaged in some blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death [or serious bodily injury]," he has not engaged in criminally negligent conduct. *Id.* (quotation omitted).

For example, in *Littlefield*, the bow of the defendant's thirty-six foot performance boat collided with the stern of a twenty-foot motorboat and

then the length of the larger boat rode over the smaller boat, killing the smaller boat's owner. *Id.* at 333. In upholding the defendant's conviction for negligent homicide, we pointed to the substantial evidence of his blameworthy, risk-creating conduct: his intoxication, his lack of attention while piloting the boat, the speed at which he operated his boat on a dark, moonless night, and his failure to see a properly illuminated boat in front of him. *Id.* at 353.

Similarly, in *Ebinger*, we likewise rejected the defendant's assertion that the evidence was insufficient to convict him of negligent homicide. *Ebinger*, 135 N.H. at 267. In that case, the defendant was driving his truck when it struck and killed a teenaged bicyclist. *Id.* at 265. In *Ebinger*, as in *Littlefield*, we pointed to the evidence of the defendant's blameworthy, risk-creating conduct, which included evidence that he was driving while under the influence of alcohol and that he drove across the white fog line into the breakdown lane. *Id.* at 266.

In *State v. Pittera*, 139 N.H. 257, 259 (1994), the defendant was operating his motorboat on Lower Suncook Lake when the boat and its propeller struck and killed a young boy who was swimming in the lake. In affirming his conviction, we emphasized the defendant's conduct, not only in failing to perceive the risk, but also in causing it. *Pittera*, 139 N.H. at 260-61. We concluded that the jury could have found that a reasonable person, in the defendant's place, would have seen the victim in the water and avoided hitting him. *Id.* at 261. Furthermore, the jury could have combined this finding with the evidence that the defendant was traveling rapidly through a cove area containing numerous docks and adjacent to a known swimming area while watching the shoreline, to conclude that his failure to become aware of the risk constituted a gross deviation from the conduct that a reasonable person would observe in the situation. *Id.*

In all three of these cases, the proof established not only that the defendant failed to perceive the risk, but also that his conduct wrongfully caused it. In *Littlefield* and *Ebinger*, the conduct that caused the risk was the defendant's consumption of alcohol; in *Pittera*, it was his speeding.

In the instant case, there is no evidence that the defendant had consumed any alcohol or drugs before driving. Nor was there was any evidence that he was speeding. At most, the evidence shows that his car inexplicably drifted over the double yellow line and into oncoming traffic for no more than two seconds. The defendant's two-second failure to keep his car in its lane may constitute civil negligence, but, without more, it does not constitute criminal negligence as a matter of law.

In arguing for a contrary result, the State relies upon *Utley v. State*, 237 S.W.3d 27 (Ark. 2006). In that case, the defendant was driving a loaded

garbage truck, which he drove across the centerline. *Utley*, 237 S.W.3d at 28. After the driver of the car in the other lane swerved to avoid the defendant's truck, the truck collided with a pickup truck, which then exploded, killing its driver. *Id.* Viewing the evidence in the light most favorable to the State, the majority concluded that substantial evidence existed to support the defendant's negligent homicide conviction. *Id.* at 30. The majority concluded that "[a] person driving a garbage truck around a curve and on a bridge should be aware that driving on the wrong side of the road presents a substantial and unjustifiable risk that he might hit a car traveling in the opposite direction and kill someone in that car." *Id.* Accordingly, the majority ruled that the defendant's failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would observe in his situation. *Id.*

As the dissent cogently argued, however, the majority's opinion is flawed because it blurs the lines between civil and criminal liability for negligence. *See id.* at 30-32 (Hannah, C.J., dissenting). As in the instant case, the evidence in *Utley* showed, at best, that the defendant had been inattentive, and while this might well give rise to civil liability, it should not, standing alone, give rise to criminal liability. *Id.* at 32 (Hannah, C.J., dissenting). As the dissent observed: "While wandering over the centerline is certainly very dangerous, it is an occurrence that, unfortunately, is commonly witnessed in everyday driving. Many dangerous actions that inattentive drivers engage in do not give rise to criminal liability." *Id.* at 31 (Hannah, C.J., dissenting).

Although the defendant was convicted of negligent homicide, "why he drove over the centerline remains entirely unknown." *Id.* (Hannah, C.J., dissenting). All we know is that some witnesses said that he drove his car a quarter to halfway into the lane of oncoming traffic, while a State trooper testified that, based upon tire marks, the defendant's car was likely between two and one-half and three feet from the centerline. What we do not know, however, is whether this was the result of an affirmative act. *Id.* (Hannah, C.J., dissenting). Moreover, gouge marks made by the Vardens' motorcycle show that their motorcycle was traveling within a foot of the yellow line at the time of the collision.

"What happened to [the defendant]? Did he doze off? Was he changing a CD or the radio? Did his mind wander? All of these acts are certainly acts of negligence, but are they acts of criminal negligence?" *Id.* at 32 (Hannah, C.J., dissenting). Or, did he sneeze? Did he hit a pothole or an object in the road? Were his tires unevenly worn or balanced? Do these acts, which are not even negligent, constitute a "gross deviation from the conduct that a reasonable person would observe in the situation"? RSA 626:2, II(d). "It would appear not." *Utley*, 237 S.W.3d at 32 (Hannah, C.J., dissenting).

Although it is not binding upon us, we find *State v. Krovvidi*, 58 P.3d 687 (Kan. 2002), persuasive. The defendant in that case had been convicted of vehicular homicide after running a red light and causing an accident that killed another person. *Krovvidi*, 58 P.3d at 688. To convict him of this offense, the jury must have found that his conduct was more than ordinary or simple negligence but less than gross and wanton negligence. *Id.* at 694. The court reversed his conviction, ruling that the defendant's mere violation of a traffic ordinance, through inattention, without more, was insufficient to constitute the degree of negligence required. *Id.* at 697. To constitute criminal negligence under Kansas law, additional aggravating factors were required. *Id.* In *Krovvidi*, there were no aggravating factors. The defendant had not been drinking and was not under the influence of any drug and was not speeding. *Id.* Under these circumstances, the court ruled that his conduct was not culpable under the vehicular homicide statute. *Id.*

In the instant matter, the degree of negligence required for criminal culpability is even higher than in *Krovvidi*. Whereas in *Krovvidi*, the required degree of negligence was *less than* gross negligence, *id.* at 694, in the instant case, gross negligence is mandated. Yet, as in *Krovvidi*, there was only the defendant's violation of a traffic law due to momentary inattention. Like the court in *Krovvidi*, we conclude that, without more, such conduct is insufficient to impose criminal liability. Were it otherwise, criminal liability would attach as a matter of law whenever a person dies in an accident caused by a driver who crosses the centerline, regardless of the circumstances. *See Utley*, 237 S.W.3d at 32 (Hannah, C.J., dissenting).

Adopting the State's position here would go well beyond our established cases, and could expand the scope of criminal negligence to encompass virtually any vehicular fatality. As *Ebinger*, *Littlefield* and *Pitterra* demonstrate, however, criminal negligence does not depend upon the consequences of the defendant's act, no matter how tragic. Rather, it is the circumstances of the defendant's conduct that control the outcome. Here, those circumstances are unknown. "Defaulting to an alleged failure by [the defendant] to offer a reasonable hypothesis that does not lead to guilt is not proof beyond a reasonable doubt. That turns criminal law on its head, essentially placing [the defendant] in the position of being guilty until he proves himself innocent." *Utley*, 237 S.W.3d at 32 (Hannah, C.J., dissenting).

In light of our ruling, we need not address the defendant's alternative argument that the trial court erred when it denied his motion for JNOV based upon the weight of the evidence.

*Reversed.*

DUGGAN and HICKS, JJ., concurred; BRODERICK, C.J., dissented.

BRODERICK, C.J., dissenting. Based upon the standard of review that we are obligated to apply, *see State v. Littlefield*, 152 N.H. 331, 350 (2005), this case, although tragic, is, in my view, not close. Viewed in the light most favorable to the State, the evidence supports findings that at approximately noon on Sunday, June 11, 2006, a partly cloudy, relatively warm and comfortable day, with good visibility, the defendant was driving his car eastbound on Route 49, a road that he had traveled hundreds of times before, at approximately 40 miles per hour. Traffic traveling in the opposite direction included, in order, a car driven by Carleton Vaughan, a motorcycle carrying Gary and Joyce Varden, a motorcycle carrying Rick and Claudia Huffman, and a car containing Christopher and Kristin Caplice. The motorcycles were traveling behind Vaughan's vehicle in staggered positions with the Varden motorcycle positioned in the center of its lane and the Huffman motorcycle positioned fifty feet behind and to the right of the Varden motorcycle.

In Thornton, where Route 49 is a narrow, winding, two-lane highway, when the defendant's car was approximately 250 feet in front of the motorcycles, Rick Huffman noticed that it began to come across the double yellow line. Carleton Vaughan described it as "coming kind of — way toward the yellow line," requiring Vaughan to "crowd[] myself over to the right to avoid it because I thought he was going to come over the yellow line." The defendant's car then crossed the double yellow line and continued until it was halfway into the lane of oncoming traffic, at which time it hit the Varden motorcycle. The Varden motorcycle and the defendant's car then collided with the Huffman motorcycle.

The defendant's car was in the wrong lane for approximately two seconds before hitting the Varden motorcycle. In addition, Vaughan noticed the defendant's car heading towards the centerline for some period of time prior to it actually crossing the line. Despite the fact that Vaughan steered his car to the right to avoid the defendant's car, the defendant took no evasive action to avoid either Vaughan or the motorcycles behind him. Nor did the defendant apply his brakes prior to hitting the motorcycles. As a result of the defendant's actions, Gary Varden, Joyce Varden and Claudia Huffman died, and Rick Huffman suffered serious bodily injury.

Under RSA 626:2, II(d), a person acts "negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(d) specifies that "[t]he risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation." Whether the defendant failed to become aware of a "substantial and unjustifiable risk" is determined by an objective test, not by reference to the defendant's subjective perception. *State v. Ebinger*, 135 N.H. 264, 265 (1992).

The majority correctly states that "the carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence, and . . . its seriousness [must] be apparent to anyone who shares the community's general sense of right and wrong." *Littlefield*, 152 N.H. at 351 (quotation and ellipsis omitted). In this case, the community has spoken — a jury of twelve has unanimously determined that the defendant's conduct satisfies the test for criminal negligence. The trial judge, who was asked to set aside the verdict in his role as the "thirteenth juror," which permits a trial judge to set aside even a verdict supported by sufficient evidence, *see State v. Spinale*, 156 N.H. 456, 465 (2007), declined to do so. I see no reason to doubt the wisdom of their collective judgment in this case.

Our case law supports the verdict. In *State v. Pittera*, 139 N.H. 257 (1994), the defendant was operating his motorboat on Lower Suncook Lake when the boat and its propeller struck and killed a young boy who was swimming in the lake. In affirming his conviction for negligent homicide, we emphasized the defendant's conduct, not only in failing to perceive the risk, but also in causing it. *Pittera*, 139 N.H. at 260-61. We concluded that the jury could have found that a reasonable person, in the defendant's place, would have seen the victim in the water and avoided hitting him. *Id.* at 261. Furthermore, the jury could have combined this finding with the evidence that the defendant was traveling rapidly through a cove area containing numerous docks and adjacent to a known swimming area while watching the shoreline, to conclude that his failure to become aware of the risk constituted a gross deviation from the conduct that a reasonable person would observe in the situation. *Id.*

Similarly, here the jury could have found that a reasonable person, in the defendant's place, would have seen the motorcycles and avoided hitting them. While the majority contends that "at most," the evidence shows that the defendant's car "inexplicably" drifted over the double yellow line and into oncoming traffic for "no more than two seconds," a reasonable jury could have found that the defendant's inattention lasted substantially

longer than two seconds and caused the accident. The evidence showed that before the defendant's car actually crossed the double yellow line, it was moving towards the line at a sufficient rate to require Vaughan to drive his car to the right to avoid the defendant. Despite forcing Vaughan's car to move out of his way, the defendant continued to cross the double yellow line and drive halfway into the oncoming lane until he collided with the motorcycles. At no point did the defendant take any evasive action or apply his brakes. Even assuming that driving in the wrong lane in the face of oncoming traffic for two seconds (which at 40 miles per hour would mean traveling in the wrong lane for approximately 40 yards) would not support the verdict in this case, the evidence shows that this case involves far more than an inexplicable two-second failure by the defendant to keep his car in his lane. A rational jury could easily conclude that the defendant was paying no attention to where his car was going for substantially longer than two seconds, despite driving at 40 miles per hour on a narrow, winding, two-lane road with oncoming traffic. Thus, the defendant engaged in blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death or serious bodily injury. *See Littlefield*, 152 N.H. at 351.

Respectfully, the majority's reliance upon the dissent in *Utley v. State*, 237 S.W.3d 27 (Ark. 2006), is misplaced. The majority quotes approvingly the dissent's statement that "[w]hile wandering over the centerline is certainly very dangerous, it is an occurrence that, unfortunately, is commonly witnessed in everyday driving." As the jury in this case undoubtedly concluded, driving halfway into the wrong lane into oncoming traffic is not something commonly witnessed in everyday driving. This was not a case of momentary inattention, such as might be caused by changing the radio or by a sneeze. The defendant's sustained inattention, leading to his car crossing halfway into the wrong lane in the face of oncoming traffic, is an occurrence that I venture most drivers have not witnessed, and hope never to witness, in their lives.

Thus, in my judgment, the majority is simply incorrect when it characterizes this case as "only the defendant's violation of a traffic law due to momentary inattention," and its fear that affirming the jury's verdict will result in "criminal liability [attaching] as a matter of law whenever a person dies in an accident caused by a driver who crosses the centerline, regardless of the circumstances" is unfounded. Juries will continue to perform their function of determining whether defendants have grossly deviated from the conduct that a reasonable person would observe. Because the evidence in this case, viewed in the light most favorable to the State, supports this jury's determination, I respectfully dissent.