Sullivan
No. 2009-109

THE STATE OF NEW HAMPSHIRE

v.

MARILYN DEMOND-SURACE

Argued: February 17, 2011
Opinion Issued: May 12, 2011

*Michael A. Delaney*, attorney general (*Diana E. Fenton*, assistant attorney general, on the brief and orally), for the State.

*Robert A. Stein & Associates, PLLC*, of Concord (*Robert A. Stein* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Marilyn Demond-Surace, appeals her conviction on two counts of vehicular assault, *see* RSA 265:79-a (2004), following a jury trial in the Superior Court (*Tucker*, J.). We reverse and remand.

The jury could have found the following facts. The defendant's convictions stem from a 2005 motor vehicle accident that killed two people riding on a motorcycle. The accident occurred on July 26, 2005, which was a clear night, at approximately 9:45 p.m. at the intersection of Route 12 and Old Claremont Road in Charlestown.

The defendant was driving home from dinner at her sister's house and traveling south on Route 12. As she approached the intersection at Old Claremont Road, she turned on her left signal and moved into the left turn lane on Route 12. She later told police that she came to a complete stop, looked for traffic in the opposite direction and did not see any headlights coming toward her. The defendant was familiar with the intersection, which she considered dangerous, and indicated that she always came to a complete stop prior to turning. Local police officers also considered this intersection to be dangerous because the grade of the road made it difficult for southbound drivers to see northbound traffic.

The victims, Justin Aiken and Robin Flaig, were riding together on a motorcycle and traveling on Route 12 in the opposite direction. They were traveling in a group that included Michael Corcoran and Pat Dezaffra, who each carried a passenger, and Timothy Chapin, who rode alone. As they headed north on Route 12, Aiken and Corcoran initially rode side-by-side, but Corcoran dropped back after realizing that Chapin had stopped to retrieve a glove he had dropped. Chapin retrieved his glove and eventually passed Corcoran. Corcoran was driving fifty-five miles per hour and Chapin sixty-five miles per hour in a fifty mile-per-hour zone, and both were

gaining ground on Aiken. Corcoran estimated that Aiken was traveling under fifty-five miles per hour and Chapin estimated that Aiken was traveling about fifty miles per hour.

As Chapin approached a hill on Route 12, he saw Aiken's brake light illuminate at the top of the hill and then lost sight of him for "a brief second." When he crested the hill, he saw smoke and debris. He observed Aiken lying next to a Jeep Cherokee, entangled in the motorcycle and Flaig lying in the middle of the road. As Corcoran crested the hill, he saw the Jeep and Flaig lying in the road and had to swerve into the left lane to avoid hitting her. Shortly thereafter, Chapin heard the defendant say, "I never saw him." The defendant also repeatedly told Corcoran that she never saw Aiken.

Corporal Aaron Reichert and Officer Todd Lyles of the Charlestown Police Department arrived at the scene. Reichert briefly spoke with the defendant, who appeared dazed. The defendant told police that she heard a crash, the airbags in her Jeep deployed and she hit her brakes. Then, upon exiting her vehicle, she saw a motorcycle and a woman lying in the road. Lyles also briefly spoke with her and noticed a slight odor of alcohol. Lyles then asked Reichert to speak with her to see if he could detect an odor of alcohol. Reichert also detected a faint odor of alcohol. The defendant told Reichert that she had one glass of wine at her sister's. Reichert did not observe any signs of alcohol impairment and the defendant's speech was clear.

Lyles then accompanied the defendant to the hospital, and while at the hospital, he detected a strong odor of alcohol. Officer Greg Belisle of the Claremont Police Department arrived at the hospital nearly two hours after the accident at 11:30 p.m. and immediately detected a strong odor of alcohol. He also noticed the defendant's speech was slurred as she spoke on the phone. The defendant did not object to any of this testimony, nor did she renew her pre-trial motion to preclude all evidence regarding her alcohol consumption.

Five months after the accident, the defendant was indicted on two counts of Class A felony aggravated negligent homicide, see RSA 630:3, II (2007), and two counts of Class B felony negligent homicide, see RSA 630:3, I (2007). The trial court subsequently granted the defendant's motion to exclude all evidence related to blood alcohol tests because the tests were taken without the defendant's consent. We affirmed that ruling. See State v. Demond-Surace, No. 2007-422 (N.H. May 20, 2008). The State then nol prossed those indictments and filed two informations charging her with vehicular assault. See RSA 265:79-a.

As noted above, prior to trial, the trial court denied the defendant's motion in limine to preclude the State from introducing evidence regard-

ing her alcohol consumption. The court agreed with the State that evidence of alcohol consumption was relevant on the issue of whether she was criminally negligent. The court also denied the defendant's request to instruct the jury that "it is not illegal or improper to drive a motor vehicle after the consumption of a small amount of alcohol." During the motion hearing, the State represented that it did not have any witnesses that would testify that the defendant was impaired or showed any signs of impairment. The court, in part, based its decision to allow evidence of the defendant's consumption of one glass of wine upon this representation. Specifically, the court told the State that "as far as the jury is going to know, she was sober. She wasn't impaired." Additionally, during the trial, the court again re-emphasized that the State could not argue or elicit testimony that the defendant was impaired:

> My understanding when we had the hearing on [the] motion in limine, my understanding was that the State was not going to suggest impairment for obvious reasons.
>
> . . . .
>
> And you were limiting — you simply wanted the jury to know that she had consumed alcohol. And you said I think at the hearing, that you would ask the jury to find that from the fact that she said that she had one glass of wine and that people smelled alcohol about her.

The court then specifically told the State that "you can't infer or have the officer infer or suggest that [the defendant] was wrong about the number of drinks she had." Finally, the court again stated:

> And the whole basis of my admitting the evidence was — your argument was it was not relevant to the question of impairment; it was relevant to the question of negligence in conjunction with all the other circumstances in the case. So whether or not she was impaired in terms of whether she was negligent isn't . . . relevant and arguably would work against the suppression order that was handed down in the earlier charge.
>
> So I mean I don't — I think you have to stay away from impairment. The basis of your introducing that evidence or wanting to introduce that evidence was simply that there was an odor of alcohol; a statement about consumption of alcohol, one glass of wine; and arguing the fact of alcohol consumption, period, without regard to impairment.

The jury subsequently convicted the defendant on both counts and this appeal followed.

On appeal, the defendant's arguments largely focus upon the court's order that the State had to "stay away from impairment." The defendant contends that the trial court impermissibly allowed the State to "use alcohol as the core of its criminal negligence claim . . . and allowed the State to imply the defendant was impaired." Specifically, she argues that the trial court erred by failing to grant a mistrial for statements made by the prosecutor in her closing argument regarding the defendant's alcohol consumption and admitting evidence that she consumed one glass of wine.

She also assigns error to the trial court's: (1) denial of her motion to dismiss the informations against her because they did not properly allege the elements of criminally negligent vehicular assault; (2) denial of her motion to dismiss for insufficiency of the evidence; (3) instruction to the jury on criminal negligence; (4) permitting Trooper Daniel Brow to testify as an expert witness; and (5) failure to grant a mistrial for statements made by the prosecutor during her closing argument regarding the defendant's actions immediately following the accident.

I

We begin with the defendant's arguments that the trial court improperly allowed the State to use evidence regarding her alcohol consumption given its earlier order. In this regard, the defendant makes two arguments, both of which are based upon her contention that the State's use of alcohol evidence in contravention of this order unfairly prejudiced her. She first argues that evidence that she consumed one glass of wine prior to the accident was inadmissible because it was irrelevant and unfairly prejudicial. She also contends that the trial court unsustainably exercised its discretion in refusing to grant a mistrial because the prosecutor impermissibly implied during her closing argument that the defendant lied about having only one glass of wine prior to the accident. Because we conclude that the court erred in its ruling on the motion for a mistrial, we begin with her latter argument and need not address her first argument.

During her closing argument, the prosecutor told the jury that the defendant admitted to consuming one glass of wine and that Officer Reichert testified that a faint odor of alcohol was consistent with her claim. However, the prosecutor continued, "But the evidence here is that some three hours later at the hospital there was a strong odor of alcohol. And that was observed by two officers . . . ." Then, toward the end of her closing argument, the prosecutor told the jury, "There was an odor of alcohol. She said she had one glass of wine, but there was a strong odor three hours later. But then she also said she looked." The defendant did not immediately object to either argument, but moved for a mistrial immediately following the closing argument and asked for a cautionary jury instruction

regarding her alcohol consumption. The court denied the motion for a mistrial because it found that the prosecutor's argument regarding the defendant's alcohol consumption was a fair response to testimony elicited by the defendant on cross-examination. The court also refused to give the cautionary instruction regarding alcohol consumption.

■ The trial court is in the best position to gauge any prejudicial effect that the prosecutor's conduct had on the jury and has broad discretion to decide whether a mistrial is warranted. *State v. Ainsworth*, 151 N.H. 691, 698 (2005). We will not overturn the trial court's ruling on whether a mistrial or other remedial action is warranted absent an unsustainable exercise of discretion. *Id.* In examining claims of prosecutorial misconduct during closing argument, we must balance "a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process." *State v. Boetti*, 142 N.H. 255, 260 (1997).

The defendant asserts that the argument was improper in light of the court's earlier ruling that the State could not imply that the defendant was lying regarding the number of drinks she had consumed. She argues that the prosecutor's argument was contrary to the State's prior representations regarding the purpose of admitting evidence of her alcohol consumption and in disregard of the trial court's ruling. She further argues that the "suggestions of alcohol impairment, dishonesty, and callousness were likely to provoke in the jury a desire to punish the defendant and cause it to base its decision on matters that were not supported by the evidence."

The court did not make clear why it chose to exclude evidence regarding whether the defendant exhibited signs of impairment. We can infer that the court was concerned with the prior order requiring the exclusion of all evidence related to the defendant's blood alcohol tests. Because of this order, the State could not prove criminal negligence by making reference to those tests. Nothing in the order excluding the blood alcohol tests necessarily precluded the State from introducing other evidence relevant to whether the defendant drove negligently, including whether she exhibited any signs of alcohol impairment. Nonetheless, the court excluded all evidence regarding alcohol impairment.

■ In allowing evidence that the defendant consumed alcohol despite having excluded all evidence that the defendant was impaired by alcohol, the court made a distinction unsupported by our case law. *See State v. Taylor*, 132 N.H. 314, 316 (1989) (explaining that an individual can be impaired without proof of a specific blood alcohol content, so long as the State proves "impairment to any degree"); *State v. Ebinger*, 135 N.H. 264, 267 (1992) (evidence of defendant's alcohol consumption was relevant to charge of criminally negligent vehicular homicide even if the evidence was

insufficient to convict him of causing the death of another while driving under the influence of alcohol). We recognize the difficulties both parties faced in complying with this directive. However, the State was still required to abide by the court's order, which made unmistakably clear that the State could not "suggest" that the defendant lied about having only one drink.

■ Despite the trial court's order, the State still contends that the prosecutor's argument was a permissible response to defense counsel's closing argument and testimony elicited by the defendant throughout the trial. In particular, defense counsel argued in his closing argument that:

> The State makes a big deal about the odor. The odor is consistent with one drink of wine, which is what my client said she had on the night in question. But everyone was asked about the odor, if it was strong, if it was weak, where was it or how was it . . . . There is no proof of what the odor has to do with this accident. We know from the evidence . . . that my client admitted to a glass of wine with dinner . . . . There is nothing illegal about having a glass of wine with dinner.

While a prosecutor may ordinarily use a closing argument to respond to defense counsel's closing arguments and to urge the jury to draw inferences of guilt from the evidence, *see Ainsworth*, 151 N.H. at 698-99; *State v. Cote*, 143 N.H. 368, 374 (1999), the court's order in this case specifically prohibited the prosecutor's argument. Accordingly, in light of that order, the State's closing argument was improper.

■ Having concluded that the prosecutor's argument was impermissible, we must next determine whether the error requires reversal of the verdict. *State v. Mussey*, 153 N.H. 272, 280 (2006). In doing so, we balance the following factors: (1) whether the prosecutor's improper argument was deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case. *Id.*

■ As for the first factor, the record does not reflect that the prosecutor intentionally ignored the court's instructions. As already noted, the court sought to differentiate between alcohol consumption and impairment, which created difficulties for both parties. While the prosecutor should have abided by the court's instructions, we cannot say that her conduct was deliberate given the unique circumstances of this case.

■ The second factor is whether the court gave an adequate curative instruction to the jury. *Id.* The State argues that this issue is not preserved because the defendant did not specifically request a curative instruction.

Generally, a contemporaneous objection is required to preserve a jury instruction issue for appellate review. *State v. Dowdle*, 148 N.H. 345, 347 (2002). We first note that while the defendant did not specifically request an instruction to cure the alleged error, she did repeat an earlier request for a cautionary instruction to clarify the purpose of evidence regarding her alcohol consumption. Additionally, following the defendant's objection to the prosecutor's argument, the court concluded that granting a mistrial or providing a curative instruction was unnecessary because the argument was permissible. At that point it was apparent that the court had "conclusively decided" that there was no error to cure and the defendant was not required to seek a curative instruction. *Cf. id.* at 348 (explaining that objection to the trial court's proposed curative instruction was unnecessary where the defendant had already requested a differing instruction because the court was aware "of the substance of defense counsel's request"). Accordingly, this factor weighs heavily in favor of the defendant because the court did not give a curative instruction.

Finally, we consider whether there was any prejudice that may have affected the outcome of the case. *Mussey*, 153 N.H. at 280. At the outset, we note that the defendant faced a higher likelihood of prejudice because the court did not give a curative instruction. *See id.* ("A trial court's immediate curative instruction bears the weight of judicial disapproval." (quotation and brackets omitted)). Additionally, in analyzing prejudice, we have previously focused upon the strength of the evidence against the defendant. *State v. Ellsworth*, 151 N.H. 152, 157-58 (2004). Here, the evidence against the defendant was not overwhelming, and, indeed, the defendant's alcohol consumption may well have been critical to obtaining a conviction. *Compare State v. Shepard*, 158 N.H. 743, 747 (2009) (explaining that a defendant's act of crossing a double yellow line was not caused by, *inter alia*, alcohol consumption) *with Ebinger*, 135 N.H. at 267 (explaining that jury was properly permitted to consider the defendant's alcohol intake and its effect upon his behavior). While the State did produce some evidence, arguably in violation of the court's order, tending to show that the defendant consumed more than one glass of wine, the prosecutor's improper argument then highlighted this for the jury in direct contravention of that order.

Moreover, the unique circumstances present in this case heightened the prejudice to the defendant, who likely prepared her trial strategy based upon the court's order. Because the defendant knew that the trial court had eliminated the issue of alcohol impairment from the trial, she did not have a full opportunity to call witnesses or present evidence to establish that she was not impaired. Additionally, the State had the final opportunity to argue its case to the jury and the defendant could not rebut the prosecutor's impermissible argument.

■ We again emphasize that "a prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." *State v. Sanchez*, 152 N.H. 625, 628 (2005) (quotation omitted). However, in this case, the court ordered the State not to present evidence that the defendant was impaired and, moreover, specifically prohibited the State from suggesting that the defendant lied about having only one glass of wine. Thus, the prosecutor's comment struck at the heart of the court's order. In light of this, we are convinced that the prosecutor's failure to abide by the order and the court's subsequent failure to grant a mistrial or issue a limiting instruction prejudiced the defendant and likely affected the case's outcome.

Based upon our ruling that the prosecutor's improper argument and the court's subsequent failure to take remedial action require a new trial, we need not address the defendant's argument that the admission of evidence that she consumed one glass of wine was irrelevant and unfairly prejudicial. As we have already explained, the prior order excluding the results of the defendant's blood alcohol tests only required the exclusion of evidence specifically related to those tests. Any unfair prejudice to the defendant resulted from the inconsistent enforcement of the court's instruction that the State had to "stay away from impairment." Accordingly, any evidence regarding whether the defendant was impaired, *e.g.*, consumption or post-arrest observations, other than the previously suppressed results of the blood alcohol tests, should be admissible on retrial unless the trial court finds other grounds rendering such evidence inadmissible.

## II

The defendant argues that the State's informations were insufficient because they did not allege any acts amounting to criminal negligence or that her alcohol consumption contributed to her negligence. The informations, which were identical other than the names of the victims, alleged that the defendant:

> did commit the crime of Vehicular Assault in that [the defendant] did negligently cause serious bodily injury to [the victims] while driving a propelled vehicle, to wit: a 1994 Jeep Grand Cherokee on Claremont Road in Charlestown, New Hampshire in that [the defendant] failed to yield the right of way to a motorcycle approaching from the opposite direction which was so close as to constitute an immediate hazard and as a result of her unlawful operation of her propelled vehicle, [the defendant] caused or materially contributed to a collision with a motorcycle being

driven by Justin Aiken and caused [the victims] to sustain serious bodily injury, to wit: severe trauma resulting in death.

█ Part I, Article 15 of the New Hampshire Constitution provides that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him." An information is constitutionally sufficient provided that it informs a defendant of the charge with adequate specificity to allow the defendant to prepare for trial and to be protected against double jeopardy. *Cf. State v. Pittera*, 139 N.H. 257, 259 (1994) (stating that indictment is sufficient under same circumstances). Once a crime has been identified with factual specificity, acts by which the defendant may have committed the crime need not be identified. *Id.*

█ In order to obtain a vehicular assault conviction, the State must allege and prove beyond a reasonable doubt that the defendant acted negligently as defined in RSA 626:2, II(d) (2007). *Shepard*, 158 N.H. at 746.

A person acts negligently with respect to a material element of an offense when [she] fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from [her] conduct. The risk must be of such a nature and degree that [her] failure to become aware of it constitutes a gross deviation from conduct that a reasonable person would observe in the situation.

RSA 626:2, II(d).

█ █ The defendant contends that when a crime charged requires proof of a particular mental state, the State must plead the specific acts satisfying the elements of that mental state. However, we have previously explained that *mens rea* standards are now defined by statute, *see* Laws 1971, 518:1; RSA 626:2, II (delineating the four culpable mental states), and an information need not specify an overt act that satisfies the crime's requisite mental state. *See State v. Pelky*, 131 N.H. 715, 720 (1989). Here, the informations alleged that the defendant acted negligently in addition to all of the other elements of the vehicular assault statute. *See State v. Davis*, 149 N.H. 698, 704 (2003) (charging document generally sufficient if it recites the language of the relevant statutes). They also provided the date of the offense, the names of the victims and some of the acts that were alleged to constitute the defendant's negligence. Accordingly, the informations provided the defendant with notice of the allegations she had to meet at trial, and they did not need to allege "other specific acts of the defendant

or circumstances that would constitute a failure to become aware of a substantial and unjustifiable risk." *Pittera*, 139 N.H. at 260.

## III

██ Finally, the defendant argues that the evidence was insufficient as a matter of law to permit the jury to find criminal negligence. She contends that the evidence was insufficient because the State did not prove that her conduct was wrongful or a gross deviation from the conduct of a reasonable person. The court denied her motion to dismiss for insufficient evidence both at the close of the State's case and prior to closing arguments. To succeed on her motion to dismiss:

> The defendant had to establish that the evidence viewed in its entirety, giving the State the benefit of all reasonable inferences, was insufficient to prove beyond a reasonable doubt that [she] was guilty of the crime charged. When reviewing the trial court's denial of a motion to dismiss, we view the evidence and reasonable inferences arising therefrom in the manner most favorable to the State. We review the entire trial record because, even though the defendant is not required to present a case, if [she] chooses to do so, [she] takes the chance that evidence presented in [her] case may assist in proving the State's case.

*State v. Littlefield*, 152 N.H. 331, 349-50 (2005) (quotation and brackets omitted).

██ Further:

> To prevail on [her] challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.

*Id.* at 350 (quotation omitted). We also note that in reviewing a sufficiency of the evidence claim, we consider all evidence, including evidence that we have concluded was erroneously admitted. *State v. Horak*, 159 N.H. 576, 582 (2010).

██ In *Shepard*, we emphasized that "[t]he carelessness required for criminal negligence is appreciably more serious than that for ordinary civil

negligence, and its seriousness must be apparent to anyone who shares the community's general sense of right and wrong." *Shepard*, 158 N.H. at 746 (quotation, brackets and ellipsis omitted). We held that criminal negligence requires both a "failure to perceive a more than ordinary risk" and "some serious blameworthiness in the conduct that caused it." *Id.* (quotation omitted). In doing so, we explained that in our prior cases, the evidence established that the defendants' wrongful conduct caused their failure to perceive a risk. *Id.* at 747; *see also, e.g., Littlefield*, 152 N.H. at 353 (defendant was intoxicated, inattentive and traveling at excessive speed); *Pittera*, 139 N.H. at 261 (defendant was driving boat at excessive speed and too close to a swimming area); *Ebinger*, 135 N.H. at 266-67 (defendant was intoxicated and traveling in a breakdown lane). We overturned Shepard's conviction because the evidence showed only that the defendant inexplicably drifted over the double yellow line for two seconds. *Shepard*, 158 N.H. at 747.

Here, the jury could have found that a reasonable person, in the defendant's place, would have seen Aiken's motorcycle and avoided hitting it. The accident occurred on a clear July night and the victims were riding on a motorcycle equipped with a "Screaming Eagle" muffler, which made the motorcycle louder than normal. The motorcycle's headlight and running lights were also on and working on the night of the crash. Additionally, one officer determined the defendant's line of sight from her position in the left turn lane on Route 12 to be approximately 3,800 feet and a second officer measured it at 1,043 feet. While the defendant seeks to characterize her behavior as a poorly timed left turn not rising to the level of criminal negligence, it is clear that she "fail[ed] to perceive a more than ordinary risk." *Id.* at 746.

 Nonetheless, the defendant argues that just as in *Shepard*, the State did not present any evidence of wrongful conduct. However, we specifically noted in *Shepard* that there was no evidence that the defendant had consumed alcohol or was speeding. *Id.* at 747. In this case, the jury could have combined the defendant's significant failure to perceive the motorcycle with evidence that she consumed alcohol and still emanated a strong odor of alcohol several hours after the accident to conclude that her conduct wrongfully caused the accident.

The State presented evidence that the defendant still smelled of alcohol several hours after the accident and had slurred speech. Thus, the jury was free to weigh and draw inferences from all of this evidence and could factor it into its decision that the defendant was criminally negligent. *See Ebinger*, 135 N.H. at 267. Alcohol consumption was one factor, among many, for the jury to consider, *see id.*, and it could have determined that her alcohol

consumption constituted "blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death or serious bodily injury." *Shepard*, 158 N.H. at 746 (quotation and brackets omitted).

Because we reverse and remand for a new trial, we need not reach the defendant's remaining arguments.

*Reversed and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.