NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2022-0244
Citation: State v. Voight, 2024 N.H. 46


THE STATE OF NEW HAMPSHIRE

v.

DAVID VOIGHT

Argued: January 3, 2024
Opinion Issued: August 29, 2024


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J.

[¶1] The defendant, David Voight, appeals his convictions on three counts of domestic violence simple assault, see RSA 631:2-b, I (2016), following a jury trial in Superior Court (Messer, J.). The defendant argues that the trial court erred when, after granting his motion in limine to exclude excerpts of a

video that the complainant captured on her cell phone and that depicted the charged conduct, it admitted a detective's testimony recounting the content of the excluded video excerpts. Because we agree with the defendant that the trial court's ruling was erroneous and conclude that the error was not harmless beyond a reasonable doubt, we reverse and remand.

[¶2] The jury could have found, or the record supports, the following facts. The defendant and the complainant were in a romantic relationship between approximately November 2017 and July 2019. Following their breakup, the defendant and the complainant remained in touch and their relationship became "on-again, off-again."

[¶3] On the night of October 12, 2019, the defendant and the complainant argued at the complainant's apartment and a physical altercation occurred. The complainant recorded a video of the altercation on her cell phone. A second argument and physical altercation between the defendant and the complainant occurred on October 15. Approximately two weeks later, the complainant reported these incidents to the police. The State subsequently charged the defendant with three counts of domestic violence simple assault arising from the October 12 altercation, and one count of second degree assault arising from the October 15 incident.

[¶4] In July 2021, the defendant moved in limine to preclude the State from admitting excerpts of the video of the October 12 incident, which the complainant had captured on her cell phone and which depicted the conduct giving rise to the October 12 charges. He asserted that the complainant had shown one of the investigating officers the entire twelve-minute video but, due to the size of the file, the complainant could not email the entire video to the officer. The officer instructed the complainant to send the officer video excerpts depicting only the physical interactions and to preserve the remainder of the video. The defendant represented that, although he had received the three video excerpts the complainant created and sent to the police, he had not received or viewed the entire video. The defendant stated that, given his multiple unsuccessful discovery requests seeking the entirety of the video footage, he understood the remainder of the video to be unavailable. He argued that, under these circumstances, admission of the video excerpts at trial would deprive him of his state constitutional right to produce all proofs favorable and would contravene the doctrine of completeness. In November 2021, the trial court ruled on the defendant's motion in limine by margin order, stating: "After review, and the State having filed no objection (either back in July when the motion was filed or by the new deadline set by the Court of November 5, 2021), the motion is GRANTED."

[¶5] On the morning that the trial was scheduled to begin in December 2021, defense counsel informed the court that the State intended to elicit testimony from a police detective about the content of the video excerpts the

2

court had excluded. The initial investigating officer — who had observed the entire twelve-minute video and who instructed the complainant to send the police the video excerpts — was not available to testify. Instead, the State intended to call the lead detective on the case, who had watched only the video excerpts.

[¶6] Defense counsel objected, arguing that the court's in limine ruling "would be useless if the [detective] then testifies about the video." He asserted that, "given the credibility of the police officer," allowing the testimony "would be like showing the jury the video" and that, without having viewed the entire video himself, he would be unable to effectively cross-examine the detective. The trial court ruled the testimony admissible. It also granted the defendant's request for a jury instruction advising the jury that it could consider the absence of evidence of the rest of the video in determining whether the State had met its burden of proof.

[¶7] There were only two witnesses at trial: the complainant and the detective. Both testified about the content of the excluded video excerpts. The jury convicted the defendant on the three counts of domestic violence simple assault arising from the October 12 incident, and acquitted him on the second degree assault charge alleged to have occurred on October 15. This appeal followed.

[¶8] We review a trial court's decision on the admissibility of evidence under our unsustainable exercise of discretion standard. State v. Letarte, 169 N.H. 455, 461 (2016). For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. Id. When applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. Id. Our task is not to determine whether we would have found differently, but is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it. Id.

[¶9] On appeal, the defendant argues that the trial court erred when, after excluding the video excerpts, it permitted the detective to testify about the content of those excerpts. The defendant contends, relying on State v. Demond-Surace, 162 N.H. 17 (2011), that after the court granted his motion in limine and the State filed no motion for reconsideration, he was entitled to rely on the court's ruling. Accordingly, he asserts that the court erred when it — in effect — reversed its prior ruling by allowing the detective's testimony. The State counters that it was within the trial court's discretion to reconsider or clarify its prior ruling and that this case is distinguishable from Demond-Surace in several respects. We agree with the defendant.

[¶10] Generally, the trial court's discretionary powers are continuous, and the court may exercise them, or correct prior discretionary rulings, "as sound discretion may require, at any time prior to final judgment." State v. MacMillan, 152 N.H. 67, 70 (2005) (quotation omitted); see also State v. Warren, 143 N.H. 633, 638 (1999) (acknowledging trial court's discretion to reconsider pretrial ruling on grounds not presented in the motion in limine). However, we have held that, under limited circumstances, a trial court can unsustainably exercise its discretion by not enforcing a prior ruling. See Demond-Surace, 162 N.H. at 22-26.

[¶11] In Demond-Surace, the trial court ruled pretrial and reiterated during trial that the State was precluded from arguing or introducing evidence that the defendant was impaired at the time of the motor vehicle crash giving rise to the charges against her. See id. at 20-21. Nevertheless, in the State's closing, the prosecutor suggested that the defendant was impaired at the time of the accident. See id. at 22. The defendant moved for a mistrial or a cautionary jury instruction, both of which the trial court denied. Id. at 22-23. On appeal, we reversed. Id. at 19, 26. We reasoned that, given the trial court's prior ruling, the prosecutor's closing argument was improper. See id. at 23-24, 26. We explained that the trial court's failure to take remedial action in response to the State's improper closing argument resulted in an "inconsistent enforcement" of the court's prior ruling, which caused unfair prejudice to the defendant due in part to her reliance on the pretrial ruling in preparing her trial strategy. See id. at 24-26.

[¶12] The circumstances in this case are analogous. Notwithstanding the court's prior exclusion of the video excerpts and months of silence from the State, the court ruled on the morning of trial that the detective's testimony was admissible. That ruling, in practical effect, allowed the content of the excluded video excerpts into evidence: the trial court ruled the detective's testimony admissible without limitation as to the purpose for which it could be offered and, at trial, the detective described the defendant's conduct as depicted in the video excerpts. The court's ruling at trial was therefore inconsistent with its pretrial ruling.

[¶13] Importantly, the trial court did not articulate any factual, legal, or procedural basis explaining this inconsistency. Cf. State v. Wilkinson, 136 N.H. 170, 176-77 (1992) (observing that trial court permissibly reconsidered pretrial ruling when trial court learned new facts at trial that altered its analysis). The legal basis for the trial court's in limine ruling was unclear, and, at trial, the court neither elucidated the basis for its original decision nor indicated that it was reconsidering the decision. Rather, the trial court reasoned that the testimony was admissible because "a person can testify to what they saw in a video in the same way they could testify to what they saw happening on the street," and because defense counsel would be able to cross-examine the detective about the fact that the detective never saw the entire

4

video. However, neither of these reasons accounts for the fact that the detective would testify to the content of video excerpts the court had already excluded. Nor do these reasons counter the thrust of the defendant's motion in limine — that admission of evidence of only part of what the video depicted could mislead the jury about what happened on October 12. Because neither the detective nor defense counsel had seen the entire video, cross-examination of the detective would have been ineffective. Under these circumstances, we conclude that it was unreasonable for the trial court to, in effect, rule inconsistently by admitting the detective's testimony. Cf. id.; MacMillan, 152 N.H. at 70-73 (holding that, although unauthorized recording of communications was excluded under wiretapping statute, witness could testify to content of communications because his knowledge of them was obtained through his direct observations as a participant in the conversation, not the unauthorized recording).

[¶14] We next consider whether the defendant has shown that the court's error prejudiced his case. See Letarte, 169 N.H. at 461. The defendant contends that the court's ruling prejudiced him because admission of the detective's testimony provided "powerfully influential evidence" supporting the October 12 charges as compared to the October 15 charge of which the defendant was acquitted. We agree. At trial, the detective described what the video excerpts depicted, which aligned with the complainant's trial testimony about the defendant's conduct on October 12 and the complainant's description of the video excerpts. Additionally, the detective testified that what she "saw in the video clips [was] consistent with the [complainant's] initial report." In short, the detective's testimony corroborated the complainant's account and substantially bolstered the complainant's credibility. Thus, the detective's erroneously admitted testimony assisted the State in proving its case to the defendant's prejudice. See State v. Dahood, 143 N.H. 471, 475 (1999) (concluding that erroneously admitted expert testimony prejudiced defendant's case when State conceded the testimony "helped the State prove its case").

[¶15] We further conclude that the trial court's trial ruling, in combination with the State's conduct, unfairly prejudiced the defendant's pretrial and trial strategy. The State failed to object, file a motion to reconsider, or otherwise respond to the defendant's pretrial motion. Given the State's conduct and the trial court's pretrial ruling, the defendant reasonably relied in his trial preparation upon his understanding that the remainder of the video was "not available." However, at trial during a break in the complainant's direct testimony, the prosecutor represented that she did not know whether the entire video had been destroyed, and the complainant on recross-examination testified that the entire video was still in her possession. Had the State notified the defendant prior to trial that the entire video had not — or may not have been — destroyed and that the full video was, or may have been, in the complainant's possession, the defendant would have had the opportunity to

5

obtain the video directly from the complainant by subpoena. See Petition of State of N.H. (State v. Lewandowski), 169 N.H. 340, 344 (2016); N.H. R. Crim. P. 17(b). Thus, the State's silence created a factual misimpression, which, combined with the trial court's trial ruling, deprived the defendant of an opportunity to secure the entire video before trial, potentially depriving him of fodder for cross-examination of both the detective and the complainant. Under these unique circumstances, it was unfairly prejudicial to the defendant for the trial court to grant the State's request that, in effect, contravened the court's pretrial ruling. See Demond-Surace, 162 N.H. at 25 (trial court's inconsistent rulings prejudiced defendant's trial strategy).

[¶16] We are not persuaded by the State's arguments to the contrary. The State asserts that the defendant was not prejudiced by the court's ruling because he "knew, or should have known, that the issue of whether [the detective] could testify to what she observed on the video [excerpts] might arise." However, our conclusion that the court's ruling prejudiced the defendant's case is not premised upon the timing of the defendant's knowledge that the State would elicit the testimony at issue. Rather, as explained above, the prejudice here was caused by the trial court's erroneous admission of the detective's testimony and by the defendant's lack of knowledge prior to trial that the entire video may still have existed.

[¶17] The State also argues that the court's jury instruction regarding the video evidence cured any prejudice. We disagree. The instruction did not remedy the defendant's lack of complete and accurate information about the video when preparing his trial strategy. Nor did it put the defendant back in the position he would have been in had the court enforced its pretrial ruling and refused to admit the detective's testimony. Moreover, the jury instruction was not curative in the sense that it neither instructed the jury to disregard the detective's testimony nor limited the purposes for which the jury could consider that evidence. Cf. State v. Turcotte, 173 N.H. 401, 403-05 (2020) (concluding that court appropriately addressed improper testimony by striking the testimony and instructing the jury that it form no part of the deliberations); State v. White, 159 N.H. 76, 79-81 (2009) (involving effective use of instruction that jury consider testimony about complainant's prior consistent statements for limited purpose of evaluating her credibility). To the contrary, the instruction specifically advised the jury that it could consider testimony regarding the video.

[¶18] Admittedly, the instruction informed the jury that it could consider the State's failure to produce evidence of the remainder of the video when determining whether the State had met its burden of proving the charges beyond a reasonable doubt. However, this permission to consider the absence of evidence about the rest of the video did not remedy the substance of the detective's testimony — which was, in effect, impeachment-proof since neither the detective nor defense counsel had seen the entire video, the video excerpts

had been excluded from evidence, and the detective had no firsthand knowledge of the events. In sum, we conclude that the defendant has established that his case was prejudiced by the erroneous admission of the detective's testimony about the content of the video excerpts and that the trial court therefore unsustainably exercised its discretion.

[¶19] The State argues that, if there was error, it was harmless beyond a reasonable doubt. To establish that the error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdicts. State v. Boudreau, 176 N.H. 1, 11 (2023). This standard applies to both the erroneous admission and exclusion of evidence. Id. To determine whether the State has met its burden, we must evaluate the totality of the circumstances at trial. See id. at 11-12. In doing so, we consider the other evidence presented at trial as well as the character of the erroneously admitted evidence itself. Id. at 11.

[¶20] The factors that we have considered in assessing whether an error did not affect the verdict include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature. Id. at 12. No one factor is dispositive. Id. This court may consider factors not listed above, and not all factors may be implicated in a given case. Id.

[¶21] Based upon our review of the trial record and the relevant factors listed above, we are not persuaded that the State has met its burden here. The other evidence of the defendant's guilt was not overwhelming. The State presented only two witnesses: the complainant and the detective. Although the complainant offered direct and detailed testimony about the assaults on October 12 and explained that they were captured on video, there was little evidence, apart from the erroneously admitted testimony, corroborating her account. Her testimony was arguably corroborated by the admission of a letter written by the defendant following the October 12 incident in which he "apologize[d]." However, although the letter was admitted as a full exhibit, it is not part of the appellate record. On the record before us, the complainant's cursory and vague description of the letter at trial was weak corroborative evidence. Accordingly, the trial centered upon the complainant's credibility. Cf. State v. Racette, 175 N.H. 132, 138 (2022) ("[A]s in many sexual assault cases, the trial centered upon the credibility of the complainant.").

7

[¶22] Given the jury's acquittal of the defendant on the October 15 charge, defense counsel was clearly successful in challenging the complainant's credibility at trial to some degree. Defense counsel also challenged the credibility of the complainant as to the October 12 charges. During cross-examination, the complainant admitted that she gave an incomplete statement to the police by omitting the fact that, just prior to the charged conduct on October 12, the couple had a separate altercation during which she hit the defendant. There was also evidence that, in the month prior to the incidents, the complainant filed for increased parenting responsibility for the couple's child, and that she did not tell the police about her conduct because of its potential impact on the parenting dispute.

[¶23] In relation to the above evidence, the detective's testimony was not, as the State avers, merely cumulative of the complainant's description of the video excerpts, nor do we find it inconsequential. See Boudreau, 176 N.H. at 12. As explained above, the detective's testimony corroborated the complainant's testimony about the assaults and bolstered her credibility. Indeed, that is exactly how the State portrayed the detective's testimony in its closing argument: it summarized what the detective saw in the video and stated that the detective testified the video excerpts were "consistent with what [the complainant] told her, because [the complainant] was telling the truth about that incident."

[¶24] Finally, we are not persuaded by the State's argument that the court's jury instruction regarding the video evidence rendered the court's error harmless. We reject this argument for the same reasons we articulated in response to the State's argument that the jury instruction prevented or cured any prejudice to the defendant's case.

[¶25] In sum, we conclude that the State has failed to meet its burden to prove the court's error was harmless beyond a reasonable doubt. This case was ultimately a credibility contest between the complainant and the defendant. Given that the complainant's credibility had been successfully challenged with respect to the October 15 charge, and the detective's erroneously admitted testimony about the video excerpts strengthened the State's case as to the October 12 charges as compared to the October 15 charge, we conclude that the State has not met its burden of proving beyond a reasonable doubt that the erroneously admitted testimony did not affect the verdicts. See State v. Reynolds, 136 N.H. 325, 329 (1992).

Reversed and remanded.

DONOVAN and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

8