**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Luis CASTILLO, Defendant–
Appellant.**

**No. 98–50343.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 5, 1999.*

Decided June 29, 1999.

---

\* The panel finds this case appropriate for sub-
mission without oral argument pursuant to

Fed. R.App. P. 34(a).

Mark F. Adams, San Diego, California, for defendant-appellant Jose Luis Castillo.

** The Honorable John W. Sedwick, United States District Judge for the District of Alas-

David L. Katz, Assistant United States Attorney, San Diego, California, for plaintiff-appellee United States of America.

Before: BRUNETTI and WARDLAW, Circuit Judges, and SEDWICK, District Judge.**

SEDWICK, District Judge:

A jury convicted Jose Luis Castillo of importation and possession of marijuana with intent to distribute. On appeal, Castillo argues the district court erred in admitting evidence of a prior arrest for cocaine possession and a prior conviction for marijuana possession. He also argues the district court erred in considering facts from acquitted counts as relevant conduct to determine his sentence. We affirm.

On May 30, 1997, an individual later identified as Castillo attempted to enter the United States through the Calexico port of entry as the driver and sole occupant of a Jeep Cherokee. The United States Immigration and Naturalization Service ("INS") inspectors opened the vehicle's rear hatch and discovered eleven packages of marijuana weighing 80.07 kilograms. Castillo ran back into Mexico when the inspectors sought to question him.

Less than a month later, on June 24, 1997, Castillo attempted to enter the United States at Calexico driving a 1985 Lincoln. Customs agents found 22.82 kilograms of marijuana in the car's secret compartment. Castillo was arrested. An officer who had participated in the May 30 inspection identified Castillo as the driver of the Jeep Cherokee. Castillo was charged and convicted of importation of marijuana and possession of marijuana

ka, sitting by designation.

with intent to distribute associated with his June 24 activities, but acquitted of similar charges related to the May 30 incident. The district court found beyond a reasonable doubt that Castillo was responsible for the drugs involved in the May 30 incident and considered them when determining Castillo's offense level for sentencing. Castillo was sentenced to 120 months imprisonment.

Before trial, the United States and Castillo filed motions in limine addressing the admissibility of two other drug-related incidents. The district court ruled that Castillo's May 27, 1997, arrest for cocaine possession was inadmissible. The district court ruled that evidence of Castillo's 1995 possession of marijuana conviction was admissible. Castillo testified at trial. On direct examination, Castillo testified that he worked with disadvantaged children, and would not have smuggled drugs "for a million dollars." Castillo portrayed himself as an anti-drug counselor who taught kids to "stay away from drugs." He added that he had never used drugs and would not touch them. Castillo's sweeping denial of any association with drugs was volunteered and often not responsive to questions posed by his lawyer. After hearing Castillo's testimony, the district court advised the parties it was reconsidering its earlier ruling excluding evidence of the 1997 arrest for cocaine possession. After affording time for additional briefing and argument, the district court revised its ruling so as to allow a rebuttal witness to testify about Castillo's 1997 arrest. Explaining that Castillo had portrayed himself as a "paragon of virtue" and "quintessential model citizen" who would never have anything to do with drugs, the district court concluded that the 1997 cocaine arrest "bears directly on [Castillo's] credibility" and admitted extrinsic evidence concerning the earlier arrest to impeach Castillo.

■ Castillo contends that Federal Rule of Evidence 608(b) expressly precludes admission of all extrinsic evidence used to attack a witness' credibility. The United States argues that Rule 608(b) is limited to attacks on character for veracity-that is, situations where the evidence's only relevance is to impeach a witness' general credibility by showing specific instances of misconduct-and does not exclude extrinsic evidence used to impeach a witness' testimony by contradiction of facts asserted in that testimony. Federal Rule of Evidence 608(b) provides in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . .

Evidentiary rulings admitting evidence of prior criminal activity under Rule 608 are reviewed for an abuse of discretion. *See United States v. Scott*, 74 F.3d 175, 177 (9th Cir.1996). We will apply the same standard to our review of the trial court's decision to permit impeachment by contradiction.

■ Although Castillo briefed and argued the district court's ruling under Rule 608(b), impeachment by contradiction is not governed by that subsection. As one commentator has observed, "[c]ounsel and courts sometimes have difficulty distinguishing between Rule 608 impeachment and impeachment by contradiction." 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence*, § 608.12[6][a] at 608–41 (2d ed. 1999) ("Weinstein"). Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity. In contrast, the concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence:

> [D]irect-examination testimony containing a broad disclaimer of misconduct

sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral. This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

2A Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure*, § 6119 at 116–17 (1993) ("Wright"). In *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993), we recognized the distinction between evidence governed by Rule 608(b) and evidence offered to impeach by contradiction.

■■■ In the case before us, the issue is whether evidence of the 1997 cocaine arrest was admissible as impeachment by contradiction. Impeachment by contradiction is properly considered under Rule 607, not Rule 608(b). Weinstein § 607.06, at 607–72–607–84. The Second Circuit has noted that, "Rule 607 appears to allow the continuation of federal practice in admitting extrinsic evidence to impeach specific errors or falsehoods in a witness' direct testimony, subject to Rule 403 considerations." *United States v. Benedetto*, 571 F.2d 1246, 1250 n. 7 (2d Cir.1978). Weinstein also suggests that courts should analyze such evidence under Rule 403. Weinstein § 607.06[3][b], at 607–79; § 608.12[6][a], at 608–42. We agree.

Broadly read, two of our cases might be said to support Castillo's contention that the district court erred by admitting evidence of the 1997 cocaine arrest, but closer analysis reveals that these cases may be distinguished. In *United States v. Bosley*, 615 F.2d 1274 (9th Cir.1980), defendant Bosley denied on cross-examination that he had ever delivered cocaine to anyone. The district court permitted the government to call a rebuttal witness who testified that Bosley had delivered cocaine to him. On appeal we said:

Upon Bosley's denial that he had delivered cocaine to Rhodes or anyone else, the Government could attempt on further cross examination to elicit a response from Bosley contradicting his prior testimony, but it could not properly impeach Bosley through extrinsic evidence of Bosley's delivery of cocaine to Rhodes.

*Id.* at 1276–77. *United States v. Green*, 648 F.2d 587 (9th Cir.1981), held it was prejudicial error to admit extrinsic evidence of drug activity to impeach testimony given on cross-examination. There, we said in a more detailed explanation:

The Government urges that Rule 608(b) should not be construed [to limit impeachment], since it gives witnesses the opportunity to commit perjury without fear of rebuttal. This contention might be persuasive had the statements in issue been volunteered on direct examination or unelicited on cross-examination. Here the statements were given in direct response to specific questions asked on cross-examination. If the Government believed that it had elicited an untruthful remark, its remedy, as noted in Bosley, was to impeach the witness through cross-examination.

*Id.* at 596 n. 12.

We do not read *Bosley* and *Green* to require exclusion of extrinsic evidence offered to impeach a witness in all circumstances. Rather, we read those cases to hold that extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination. This is a significant distinction recognized by many authorities. *See, e.g.,* Wright § 6119, at 116–19. Courts are more willing to permit, and commentators more willing to endorse, impeachment by contradiction where, as occurred in this case, testimony is volunteered on direct examination. *Id.* The distinction between direct and cross-examination recognizes that opposing counsel may manipulate questions to trap an unwary witness into "volunteering" statements on cross-examination.

The distinction also recognizes that, as a practical matter, it is often difficult to determine whether testimony is invited or whether it is volunteered on cross-examination.

■ As *Green* suggests and Wright points out, there may be situations where testimony given during cross-examination may be impeached by contradiction. *See Green,* 648 F.2d at 596 n. 12; Wright, § 6119 at 119–121. Accordingly, we do not hold that a bright line distinction between testimony volunteered on direct examination and testimony elicited during cross-examination must be rigidly enforced so as to exclude all impeachment by contradiction of testimony given during cross-examination.[1] We do hold that Castillo's expansive and unequivocal denial of involvement with drugs on direct examination warranted the district court's decision to admit extrinsic evidence of the 1997 cocaine arrest as impeachment by contradiction.

■ We now turn to the admission of Castillo's marijuana possession conviction. Evidentiary rulings admitting evidence of other acts under Federal Rule of Evidence 404(b) are reviewed for an abuse of discretion, *see United States v. Ayers,* 924 F.2d 1468, 1472 (9th Cir.1991), but whether the evidence of other acts is relevant to the crime charged is reviewed de novo. *See United States v. Jackson,* 84 F.3d 1154, 1158–59 (9th Cir.1996).

■ Rule 404(b) says evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith," but may be admitted for other purposes such as "proof·of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Rule 404(b) is a rule of inclusion, *see United States v. Meling,* 47 F.3d 1546, 1557 (9th Cir.1995); unless the evidence of other acts only tends to prove propensity, it is admissible. *See Ayers,* 924 F.2d at 1473.

We apply a four-part test to determine whether evidence of other acts should be admitted:

> Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994). Such evidence must also pass scrutiny under Rule 403. *See United States v. Basinger,* 60 F.3d 1400, 1408 (9th Cir.1995).

The 1995 incident arose after 240 pounds of marijuana were discovered in a car in which Castillo was a passenger. When police stopped the car, Castillo quickly exited the vehicle and seemed ready to flee. The investigating officer testified that Castillo appeared to be the individual in charge; the driver deferred to Castillo on nearly all questions asked by the officer. Ultimately, Castillo pled guilty to possession of marijuana for sale. The district court concluded that evidence of Castillo's 1995 conviction for marijuana possession satisfied the four-part test for admissibility under Rule 404(b) and further held that the probative value of the evidence was not outweighed by any unfairly prejudicial effect. The district court did not abuse its discretion. Evidence of the 1995 conviction was relevant to establish Castillo's knowledge and absence of mistake or accident. The 1995 conviction was not too remote in time. Castillo's conviction shows that he committed the act. The earlier act was similar to the charged offenses. Finally, the probative value of the evidence is not substantially outweighed by unfair prejudice or otherwise subject to exclusion under Rule 403.

■ Castillo also challenges his sentence. Interpretation and application

---

1. We recognize that as a practical matter trial courts likely will use the bright line distinction as a rule of thumb subject to exception only in rare situations where it is clear that testimony on cross-examination was truly volunteered.

of federal sentencing guidelines present questions of law reviewed *de novo*. *See United States v. Gavilan*, 966 F.2d 530, 531 (9th Cir.1992). However, the district court's factual findings are reviewed under the clearly erroneous standard. *See United States v. Burns*, 894 F.2d 334, 336 (9th Cir.1990).

Castillo argues that the district court erred in considering facts from acquitted counts as relevant conduct in determining his sentence. In *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), the United States Supreme Court held that a sentencing court may consider facts underlying acquitted counts as relevant conduct for sentencing purposes so long as the conduct is proven by a preponderance of the evidence. *Id.* at 157, 117 S.Ct. 633. The district court found that the United States had established Castillo's participation in the acquitted counts beyond a reasonable doubt, an even higher standard. Upon review, we cannot say that the district court's factual finding was clearly erroneous.

The judgment of the district court is AFFIRMED.