562

Belknap
No. 99-389

## THE STATE OF NEW HAMPSHIRE

v.

## MICHAEL CANNON

June 27, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Behzad Mirhashem*, acting chief appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. After a jury trial in Superior Court (*Smukler*, J.), the defendant, Michael Cannon, was convicted of one count of aggravated felonious sexual assault. *See* RSA 632-A:2 (1996). On appeal, he argues that the trial court erred in excluding testimony. We reverse and remand.

The relevant facts follow. On December 8, 1997, the complainant went to the defendant's home to "hang out." The defendant was the ex-boyfriend of the complainant's friend, Jen Coigley. Upon arrival at the defendant's home, the complainant went upstairs to a bedroom with the defendant to watch television. The complainant testified that while the two were lying on a bed watching television, the defendant forced her to have sexual intercourse. While the defendant admits to having intercourse with the complainant, he maintains that it was consensual.

The defendant first argues that the trial court erred in excluding the testimony of Louis Sylvester, the defendant's cousin, concerning the complainant's prior consensual sexual activity. While the defendant concedes that generally such testimony is inadmissible under the rape shield doctrine, he contends that the complainant opened the door to the admission of Sylvester's testimony when she testified that the reason she did not want to have sex with the defendant was because she had a boyfriend. We agree.

During the trial, the prosecutor asked the complainant about the events leading to the alleged assault:

Q: Okay. And he was trying to touch your side in what fashion? He is laying down next to you, how is he taking his hand trying to touch you?

A: He was just reaching over.

Q: What did you do?

A: I pushed his hand off of me and told him no.

Q: Why?

A: Because I had a boyfriend.

Q: After he reached over to try to touch you, what did he do next?

A: He just kept trying to touch me. It was just like he kept trying. It wasn't like he just stopped.

Q: What was he saying, if anything, as he was trying to touch you?

A: You know you want to.

Q: And what were you saying?

A: No. I have a boyfriend and Jen was my friend. I didn't want to hurt her.

After the State rested its case, the defense moved to call Sylvester as a witness. Defense counsel explained that Sylvester would testify to an incident that occurred one or two weeks prior to the alleged assault. He proffered the following account of the incident. Sylvester was with the complainant, the defendant, and Coigley at the defendant's home. At some point, Sylvester and the complainant were left alone in the bedroom. The complainant became sexually aggressive toward Sylvester. Although he initially resisted, Sylvester had consensual sex with the complainant after the defendant encouraged him to do so.

The trial court denied the defendant's motion, citing New Hampshire Rules of Evidence 403, 412 and 608, and "the rules that require certain timeliness for filing *Howard* motions." *See State v. Howard*, 121 N.H. 53 (1981). The court found that the defendant had notice through discovery that one reason the complainant did not want to have sex with him was because she had a boyfriend and further, that the defendant knew about Sylvester's encounter with the complainant. Additionally, the court found that the prejudicial effect of Sylvester's testimony would have outweighed its probative value "on a very peripheral issue."

"We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Young*, 144 N.H. 477, 482 (1999) (citations and quotation omitted).

 The rape shield doctrine generally prohibits introduction of evidence concerning the prior consensual sexual activities of sexual assault victims. *See* RSA 632-A:6, II (1996); N.H. R. EV. 412. We have held that "the requirement of due process and the right of confrontation limit the application of the rape shield law when evidence of the victim's prior sexual activity with people other than the defendant has a probative value in the context of a particular case that outweighs its prejudicial effect on the victim." *State v. Goulet*, 129 N.H. 348, 351 (1987) (quotation and brackets omitted); *see also State v. Howard*, 121 N.H. at 58-59. A defendant seeking to introduce evidence of a complainant's prior sexual history must file a *Howard* motion with the court not less than forty-five days prior to trial. *See* SUPER. CT. R. 100-A. "If the defendant fails to file such motion, he shall be precluded from relying on such evidence, except for good cause shown." *Id.*

 We hold that the trial court erred in denying the defendant's motion. While normally evidence of the complainant's sexual history would be excluded pursuant to the rape shield doctrine, the State opened the door to the admissibility of Sylvester's testimony when it asked the complainant why she pushed the defendant's hands away and told him "No." *Cf. State v. Taylor*, 139 N.H. 96, 99-100 (1994) (defendant opened the door to admission of testimony regarding prior sexual assaults when he testified that he did not sexually assault the victim because he "wouldn't do a thing like that"); *State v. Williams*, 487 N.E. 2d 560, 562-63 (Ohio 1986) (defendant entitled to present evidence to rebut complainant's testimony that she never consents to sex with men).

 The State asserts that the opening-the-door doctrine does not apply because the complainant's statements "were not such plain denials of specific prior behavior that it 'opened the door' to her past infidelity." We disagree. The complainant specifically testified that she told the defendant "no" because she "had a boyfriend." She had no obligation to explain her reasoning for not consenting; however, once she did so at the request of the State, the defendant was entitled to present evidence to refute her assertion. The central issue in this case was whether the complainant consented to having sexual intercourse with the defendant. The complainant's testimony served only to bolster her credibility regarding the issue of consent. *See State v. Calbero*, 785 P.2d 157, 161 (Haw. 1989). In such a circumstance, the defendant is entitled to rebut this assertion because the probative value of the proffered evidence would outweigh its prejudicial effect on the victim. *See Howard*, 121 N.H. at

61; N.H. R. EV. 403, 412. Additionally, Sylvester's testimony is not prohibited by New Hampshire Rule of Evidence 608, which generally prohibits the introduction of extrinsic evidence to prove specific instances of bad conduct of a witness for the purposes of attacking the witness's credibility. *See* N.H. R. EV. 608. The State opened the door to this otherwise inadmissible evidence and the defendant is thus entitled "to counter with evidence to refute the impressions created by [her] testimony." *State v. Mello*, 137 N.H. 597, 601 (1993) (quotation and ellipses omitted). Thus, the trial court's characterization of this issue as "peripheral" and its subsequent denial of the defendant's motion were erroneous.

■ The State also argues that the defendant should have filed his *Howard* motion within the proper time frame because he had notice that the basis for such a motion existed prior to the deadline. Specifically, the State asserts that the defendant had notice through discovery of the complainant's statement to the police that she repeatedly told the defendant "no" because she had a boyfriend. While we agree that the defendant had notice of the complainant's statements to the police, we disagree that knowledge of this information formed a sufficient basis upon which to file a *Howard* motion. Sylvester's testimony would not have been admissible if the State had not opened the door to its admission by asking the complainant her reasons for not consenting to sexual intercourse with the defendant. The defendant could not have been expected to foresee that the State would present him with the opportunity to admit this otherwise inadmissible testimony. Accordingly, we reverse the defendant's conviction and remand.

■ We briefly address the defendant's remaining arguments to the extent that they are likely to arise in a new trial. *See State v. Frost*, 141 N.H. 493, 498 (1996). On cross-examination, the complainant testified that she had never asked James Gagnon to go out on a date. The defendant later sought to elicit testimony from Gagnon rebutting the complainant's testimony. The trial court excluded the testimony as extrinsic evidence prohibited by New Hampshire Rule of Evidence 608. The defendant argues that this testimony is admissible because the complainant opened the door to its admission by testifying that she never asked Gagnon for a date. Further, he argues that the complainant's "direct examination testimony created the impression that she would not consent to sex with [the defendant] because she was the kind of person who stayed in a monogamous relationship with her boyfriend, and not the kind that

would hit on people already involved in a relationship with her friends and classmates."

Rule 608(b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence." N.H. R. Ev. 608(b). "Rule 608 . . . is directed at the use of such evidence to impeach a witness's general credibility." *State v. Mello*, 137 N.H. at 600. Extrinsic evidence is permissible, however, when it directly contradicts a witness's testimony because such evidence does not attack the witness's general credibility, but rather the truthfulness of the specific testimony. *See State v. Vandebogart*, 139 N.H. 145, 167 (1994).

Gagnon's testimony concerning whether or not the complainant asked him out on a date could serve to rebut the complainant's testimony that she never asked him out on a date. This testimony did not open the door to admission of extrinsic evidence concerning whom she had asked out on dates in the past. Gagnon's proposed testimony is distinguishable from Sylvester's in that Sylvester's testimony could directly refute the complainant's testimony regarding her stated reason for not consenting. We cannot, however, say that the trial court abused its discretion in limiting the scope of Gagnon's testimony because the defendant has not demonstrated "that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Young*, 144 N.H. at 482. This conclusion, however, does not bar the parties from revisiting this issue upon remand.

The defendant raised other issues in his notice of appeal, but did not brief them. Therefore, they are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Reversed and remanded.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred.