NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

―――――――――――――――――――

Coos
No. 2014-0791


THE STATE OF NEW HAMPSHIRE

v.

JAMIE F. LETARTE

Argued: October 19, 2016
Opinion Issued: December 9, 2016


Joseph A. Foster, attorney general (Sean P. Gill, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


DALIANIS, C.J. The defendant, Jamie F. Letarte, appeals his conviction by a jury on one count of aggravated felonious sexual assault, see RSA 632-A:2, I(j)(2) (2016), and one count of felony indecent exposure, see RSA 645:1, II(a) (Supp. 2014) (amended 2015). On appeal, he argues that the Superior Court (Bornstein, J.) erred when it precluded him from introducing extrinsic evidence to impeach the victim's testimony on a collateral matter during her cross-examination by defense counsel, see N.H. R. Ev. 608(b), and when it denied his motion to vacate the verdict and schedule a new trial. We affirm.

I.  Background

The jury could have found the following facts.  The defendant is the biological father of the victim.  The charges stem from an incident that occurred in February 2012.  The victim, who was then approximately 13 years old, was having a friend sleep at her house.  The victim and her friend became intoxicated on alcohol that the defendant had provided them.  When the victim woke up in the early morning, she felt the defendant's fingers inside her vagina and, when she told him to stop, he masturbated in her presence.

The defendant was tried in October 2014.  During his opening statement, defense counsel told the jury that the victim had accused the defendant of sexually assaulting her "so she could deflect attention from her own misconduct that day."  Defense counsel said that "this is . . . not an unusual move for [the victim]" because she had "threatened to do the same thing to another family member."  For ease of reference, we refer to the family member as "the witness."  Defense counsel explained that the witness would tell the jury that when the victim and her mother were staying at his house, he "noticed that [the victim] appeared to be intoxicated" and "that his liquor cabinet had been broken into."  According to defense counsel, the witness would also testify that, when he told her that she and her mother had to leave, to avoid being removed from the home, the victim said to her mother, "[A]ll I have to do is say that [the witness] attempted to rape me."

The State objected, arguing that the witness's proposed testimony was inadmissible.  Defense counsel countered that the proposed testimony was probative of the victim's credibility.  Defense counsel explained that he sought not only to cross-examine the victim about the alleged incident involving the witness, but also to introduce the witness's testimony to impeach her if she denied it.

The trial court ruled that the proposed cross-examination was permissible and stated, that "at least at this point[,] . . . reference to such evidence in opening arguments is permissible and it would be anticipated that the extrinsic evidence would be admissible as well."  The trial court explained that, if the parties "want to have a further hearing out of the presence of the jury tomorrow morning . . . [where the witness] testifies . . ., we can certainly do that."

Defense counsel then continued his opening statement, repeating that accusing a family member of sexual assault "is not an unusual move" for the victim because she had told her mother that "all" she had to do "is call the police and tell them that [the witness] attempted to rape [her] and he will be the one out of the house."  Defense counsel asserted that "[t]here's a pattern[;] [i]f [the victim] doesn't like the situation, she'll go to extreme lengths to rid herself of people, including [making] . . . false allegations of sexual assault, false

2

allegations to either . . . the police or investigators, and that's what's going on here."

When the victim testified on direct examination, she was not asked, and did not testify, about the witness incident or about any other alleged incident not involving the defendant. On cross-examination, however, in response to questioning by defense counsel, the victim denied threatening to tell the police that the witness had sexually assaulted her. She also denied telling the witness that she "would tell the police that he raped" her.

The court then heard additional argument from the parties regarding whether the witness should be allowed to testify so as to impeach the victim's testimony. The State objected to the witness's proposed testimony on the ground that its admission violated New Hampshire Rule of Evidence 608(b) because it constituted extrinsic evidence offered to impeach a witness on a collateral matter. See N.H. R. Ev. 608(b) (providing, in pertinent part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, . . . may not be proved by extrinsic evidence"); see also State v. Hopkins, 136 N.H. 272, 276 (1992) (explaining the collateral issue rule). The State also observed that the witness incident occurred more than a year after the incident involving the defendant. Defense counsel countered that the witness's testimony fell within an exception to Rule 608(b)'s bar to extrinsic evidence, which we adopted in State v. Ellsworth, 142 N.H. 710, 718-19 (1998), and which applies to allegedly false allegations of sexual assault.

The trial court preliminarily concluded that the Ellsworth exception was the proper lens through which to view the proposed testimony. Thus, over the State's continued objection, the trial court conducted a hearing, outside of the jury's presence, to determine whether the witness's testimony met that exception. The witness testified that he and the victim had fought because he thought that she had broken into his liquor cabinet and stolen his liquor. He testified that he told the victim that he "didn't want her drinking in [his] home and she got very upset about it." When the witness went into the kitchen, he saw the victim and her mother talking and heard the victim tell her mother "that all she needed to do was to call the police and tell them that [he] had sexually molested her and they would take [him] out of the house."

Defense counsel then argued that the witness's testimony was admissible pursuant to the Ellsworth exception to Rule 608(b)'s bar to extrinsic evidence because he had submitted "clear proof" that, had the victim actually made the accusation she threatened to make, it "would've been false." Alternatively, defense counsel argued that the testimony was admissible under State v. Vandebogart, 139 N.H. 145, 165-67 (1994), to show that the victim "was lying on the stand." The trial court ruled that the witness's testimony did "not fit within" the Ellsworth exception and was also inadmissible under Vandebogart.

3

As a result, the witness was not called for the defense. Defense counsel objected to the ruling, explaining that counsel had "relied on . . . the Court's representation . . . that this was an Ellsworth case" in crafting his opening statement, cross-examining witnesses, and presenting the defense.

After the trial had concluded, the defendant filed a motion to vacate the verdict and for a new trial based upon what he termed the court's "last minute determination that the Ellsworth exception did not apply" to the witness's testimony. In the motion, defense counsel reiterated that he had relied upon the trial court's "statements that the evidence regarding . . . [the witness] would be admissible pursuant to Ellsworth," and, because of that reliance, had "highlighted and stressed this evidence to the jury in opening statements" and in his cross-examination of the victim. Defense counsel argued that the trial court's "[i]nconsistent application" of its prior ruling that the Ellsworth exception applied to the witness's testimony "worked a reversible prejudice to [the] defense" and deprived the defendant of his right "not only to due process but also to a fair trial" pursuant to Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the Federal Constitution.

Following a hearing, the trial court denied the defendant's motion. The court found that because defense counsel summarized the witness's proposed testimony to the jury in his opening statement before the State had objected and before the court, ultimately, had ruled that the witness's testimony was inadmissible, the defendant could not claim to have been prejudiced. This appeal followed.

II. Analysis

The defendant argues that the trial court erred when it: (1) precluded him from introducing the witness's testimony to impeach the victim's testimony on cross-examination; and (2) denied his motion to vacate and for a new trial. We address each argument in turn.

A. Ellsworth Exception

The defendant first asserts that the witness's testimony was admissible under the Ellsworth exception to Rule 608(b)'s bar to extrinsic evidence. We review a trial court's decision on the admissibility of evidence under our unsustainable exercise of discretion standard. State v. Towle, 167 N.H. 315, 320 (2015). "For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case." Id. In applying our unsustainable exercise of discretion standard of review, we determine only "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001). "Our task is not to determine whether we would have found differently," but is only "to

4

determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Benoit v. Cerasaro, 169 N.H. 10, 21 (2016) (quotation and brackets omitted).

Rule 608(b) provides, in pertinent part:

> Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

(Emphases added.) Thus, under Rule 608(b), although a cross-examiner may inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, the examiner, generally, must take the answer as the witness gives it. Hopkins, 136 N.H. at 276. The examiner may not introduce extrinsic evidence, such as calling other witnesses, to prove conduct of a witness that is probative of that witness's character for truthfulness or untruthfulness. See N.H. R. Ev. 608(b).

One way to think of Rule 608(b) is that it is an exception to Rule 404(b)'s general prohibition against introducing character evidence for the purpose of showing that a person has a propensity to behave in a certain way, and, therefore, behaved in that way on a particular occasion. See Johnson, Prior False Allegations of Rape: Falsus in Uno, Falsus in Omnibus?, 7 Yale Journal of Law & Feminism 243, 250-51 (1995). Rule 608(b) permits inquiry of the witness about a prior instance of lying for the purpose of showing that the witness has the character trait of being a liar (a propensity to lie) and, therefore, her testimony should not be believed by the fact finder. See id. But the rule specifically limits the manner of eliciting this character evidence to inquiry on cross-examination and prohibits proof of the lie through extrinsic evidence. See id. at 251. If the witness denies having lied on the prior occasion, the cross-examiner cannot introduce extrinsic evidence to contradict the witness's testimony on the point. See id.

In Ellsworth, because of constitutional concerns, we explained that, in sexual assault cases, Rule 608(b)'s bar to extrinsic evidence "should not be interpreted so strictly as to preclude the admission of extrinsic evidence that is probative of a material issue." Ellsworth, 142 N.H. at 719. We cautioned that such extrinsic evidence "should be admitted only where the allegations [of sexual assault] are similar, and the proffered evidence is highly probative of the

material issue of the complainant's motives." Id. We have since clarified that to introduce extrinsic evidence of prior allegations of sexual assault, the defendant must demonstrate that the allegations were "demonstrably false," which we have interpreted to mean "clearly and convincingly untrue." State v. Miller, 155 N.H. 246, 250 (2007) (quotations omitted).

The defendant argues that "[b]ecause the Ellsworth [exception] applies" to the witness's testimony, we "must find that the [trial] court erred in excluding [it]." We disagree. Ellsworth is a narrow exception that applies only to prior demonstrably false accusations of sexual assault. The witness's testimony did not concern such an accusation. Indeed, whatever probative value extrinsic evidence of a prior false accusation of sexual assault may have concerning a victim's credibility, a mere threat to make such an accusation has even less probative value. Arguably, people are more likely to make threats than they are to carry out such threats. Here, even assuming that the victim made the threat attributed to her by the witness, there is no suggestion that she ever carried out the threat by actually accusing him of sexually assaulting her. That being the case, the Ellsworth exception does not apply, and the trial court did not unsustainably exercise its discretion by limiting the defendant to exploring the matter through cross-examination of the victim.

### B. Vandebogart

The defendant next contends that the witness's testimony was admissible to rebut the victim's testimony on cross-examination pursuant to our opinion in Vandebogart. In Vandebogart, we upheld the trial court's decision to allow the State to "call a rebuttal witness to contradict the defendant's testimony on collateral issues" on cross-examination. Vandebogart, 139 N.H. at 165. The defendant contends that "[b]ut for the substitution of the [victim] in the place of the defendant, and the defense in the place of the prosecution, this case presents an identical situation" to that in Vandebogart. We interpret the defendant's argument to be that, just as the prosecution in Vandebogart was allowed to impeach with extrinsic evidence the testimony of the defendant in that case as to a collateral matter, he should have been allowed to use extrinsic evidence to impeach the testimony of the victim as to a collateral matter. Notably, the defendant does not argue that the witness's testimony is admissible under any other evidentiary rule.

### 1. Vandebogart in Context

Before addressing the merits of the defendant's argument, we place Vandebogart in the proper context. Strictly speaking, Vandebogart is not a Rule 608(b) case. Rather, it concerns impeachment of a witness by contradiction. "Impeachment by contradiction refers to impeachment with evidence that the target witness made a factual error in his testimony." R. Park & T. Lininger, The New Wigmore  A Treatise on Evidence: Impeachment and

6

Rehabilitation § 4.1, at 197 (2012).  It "is a well-recognized tool for exposing a witness' lack of credibility."  United States v. Fonseca, 435 F.3d 369, 375 (D.C. Cir. 2006).  "Most commonly, the contradiction is shown through the testimony of another witness"; in other words, the contradiction is shown through extrinsic evidence.  Park & Lininger, supra at 197.

Impeachment by contradiction is not covered by Rule 608(b).  See Morgan v. Covington TP., 648 F.3d 172, 179 (3d Cir. 2011) (discussing Federal Rule of Evidence 608(b)); see also United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999) (same); United States v. Lopez, 979 F.2d 1024, 1033-34 (5th Cir. 1992) (same).  Whereas Rule 608(b) concerns the use of extrinsic evidence of "[s]pecific instances of the conduct of a witness" offered "for the purpose of attacking or supporting the witness' . . . character for truthfulness," N.H. R. Ev. 608(b) (emphasis added), impeachment by contradiction concerns the use of extrinsic evidence to contradict specific testimony given under oath, see Morgan, 648 F.3d at 179.

Put another way, "Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' . . . general veracity," while "impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because [it is] contradicted by other evidence."  Castillo, 181 F.3d at 1132; see State v. Cannon, 146 N.H. 562, 567 (2001) (stating that "[e]xtrinsic evidence is permissible . . . when it directly contradicts a witness's testimony because such evidence does not attack the witness's general credibility, but rather the truthfulness of the specific testimony"); State v. Mello, 137 N.H. 597, 600 (1993) (explaining that Rule 608(b) "is directed at the use of [extrinsic evidence] to impeach a witness's general credibility" and is not directed at the use of such evidence to impeach when a defendant gives "a knowingly false answer under oath" (quotation omitted)).

"Impeachment by contradiction is permitted by Rule 607," United States v. Greenidge, 495 F.3d 85, 99 (3d Cir. 2007), which provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness," N.H. R. Ev. 607.  See C. Wright & V. Gold, 27 Federal Practice and Procedure § 6096, at 655 (2007) ("While the Evidence Rules do not explicitly recognize contradiction as a basis for attacking credibility, the admissibility of contradiction evidence can be inferred from the relevance rules and Rule 607." (footnotes omitted)).  "The court, in deciding whether to allow an instance of impeachment by contradiction, engages in a Rule 403 analysis." Greenidge, 495 F.3d at 99; accord Castillo, 181 F.3d at 1133.  Thus, although evidence that impeaches a witness by contradiction is relevant because it undermines the witness's credibility, it may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fonseca, 435 F.3d at 375 (quotation omitted); see N.H. R. Ev. 403.

7

### 2. Use of Extrinsic Evidence

The general rule is that a witness may <u>not</u> be impeached by contradiction through extrinsic evidence as to a collateral matter. <u>See</u> Wright & Gold, <u>supra</u> § 6096, at 659; <u>see</u> <u>also</u> <u>United States v. Perez-Perez</u>, 72 F.3d 224, 227 (1st Cir. 1995) (explaining that "largely for reasons of efficiency, extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand"). "The objective" of the collateral issue rule "is to avoid a 'trial within a trial,' that is, to avoid the litigation of issues that are collateral to the case at hand." <u>Hopkins</u>, 136 N.H. at 276.

"A matter is collateral if the impeaching fact could not have been introduced into evidence for any purpose other than the contradiction." <u>Calhoun v. Ramsey</u>, 408 F.3d 375, 382 (7th Cir. 2005) (quotation omitted). Thus, generally speaking, "one may not contradict for the sake of contradiction; the evidence must have an independent ground for admission." <u>United States v. Bonner</u>, 302 F.3d 776, 785 (7th Cir. 2002) (quotation and ellipsis omitted); <u>accord</u> <u>United States v. Schwyhart</u>, 123 Fed. App'x 62, 66 (3d Cir. 2005); <u>United States v. Scott</u>, 243 F.3d 1103, 1107 (8th Cir. 2001). Such independent grounds include proving a substantive fact in the case or proving that a witness was biased or lacked personal knowledge. <u>See</u> Wright & Gold, <u>supra</u> at 661.

The opening-the-door doctrine is an exception to the general ban on the use of extrinsic evidence to impeach a witness's testimony on a collateral matter. <u>See</u> <u>id</u>. at 665; <u>see</u> <u>also</u> <u>Jones v. Southern Pacific R.R.</u>, 962 F.2d 447, 450 (5th Cir. 1992). Thus, when a witness "opens the door" to a collateral issue, extrinsic evidence may be admissible to impeach her by contradiction. <u>See</u> <u>Jones</u>, 962 F.2d at 450; <u>see</u> <u>also</u> <u>Mello</u>, 137 N.H. at 601.

In some jurisdictions, the opening-the-door exception applies <u>only</u> to a witness's testimony on direct examination. <u>See</u> Wright & Gold, <u>supra</u> at 667-68. In those jurisdictions, extrinsic evidence is inadmissible to impeach a witness's cross-examination testimony as to a collateral matter. <u>See, e.g.</u>, <u>Caruso v. State</u>, 645 So. 2d 389, 394-95 (Fla. 1994); <u>State v. Gibson</u>, 113 P.3d 423, 430 (Or. 2005) (en banc). "The policy behind this rule is to prevent the cross-examiner from injecting collateral matters into the trial by setting the witness up and then allowing the very party that injected the matter into the trial to impeach the witness's credibility with extrinsic evidence relating to those collateral matters." <u>Jezdik v. State</u>, 110 P.3d 1058, 1063-64 (Nev. 2005).

By contrast, in other jurisdictions the opening-the-door exception may be applied to a witness's cross-examination testimony when that testimony is "truly volunteered." <u>Castillo</u>, 181 F.3d at 1134 n.1. Additionally, in the context of constitutional claims, federal courts have ruled that extrinsic

evidence may be admissible to impeach a criminal defendant's cross-examination testimony as to collateral matters provided that the questions on cross-examination are "closely . . . connected with matters explored during direct" examination. United States v. Morla–Trinidad, 100 F.3d 1, 5 (1st Cir. 1996) (discussing the impeachment exception to the exclusionary rule under the Fourth Amendment to the Federal Constitution); see also United States v. Havens, 446 U.S. 620, 622-23, 626-27 (1980) (deciding, as a constitutional matter, that the trial court did not err by allowing the government to impeach with extrinsic evidence the criminal defendant's testimony on direct examination that he was not involved in drug smuggling and the similar statements he "made in response to proper cross-examination reasonably suggested by" the direct examination).

Courts are cautious when allowing extrinsic evidence to impeach a witness's cross-examination testimony on collateral matters. See United States v. Kincaid–Chauncey, 556 F.3d 923, 932-33 (9th Cir. 2009), abrogated on other grounds by Skilling v. United States, 561 U.S. 358 (2010). This is, in part, because "when the testimony to be contradicted is offered under cross-examination, impeachment by contradiction is far less likely to achieve its intended purpose of rooting out perjury because opposing counsel may manipulate questions to trap an unwary witness into 'volunteering' statements on cross-examination." Id. (quotation omitted). Moreover, "it is often difficult to determine whether testimony is invited" by leading questions on cross-examination or whether it is "volunteered," similar to when a defendant volunteers an irrelevant fact on direct examination. Id. at 933 (quotation omitted). Accordingly, the rule in some jurisdictions is that impeachment by contradiction with extrinsic evidence is allowed "only in rare situations where it is clear that testimony on cross-examination" as to a collateral matter "was truly volunteered." Castillo, 181 F.3d at 1134 n.1.

In Vandebogart, we aligned ourselves with those jurisdictions that have permitted extrinsic evidence to impeach a criminal defendant's testimony on cross-examination as to collateral matters. See Vandebogart, 139 N.H. at 165-67. We said that, with regard to the opening-the-door doctrine, we saw "no reason to distinguish the defendant's statements on direct examination from his responses to questions asked on cross-examination." Id. at 167. Thus, although the extrinsic evidence was offered to impeach the defendant's testimony on cross-examination as to collateral issues, we upheld the trial court's decision to allow it. Id. at 165, 167.

Although we discussed Rule 608(b) in our decision, the evidence at issue in that case did not actually fall within the specific prohibition of that rule. In Vandebogart, the information elicited from the defendant on cross-examination—concerning how he got to know the witness, what he told her about his fiancée, and when he had last seen her—did not demonstrate that he had lied on prior occasions and, therefore, had the character trait of

untruthfulness.  Id. at 165.  Rather, if his testimony on those points was false, extrinsic evidence contradicting the testimony and, thus, proving its falsity would not merely allow the jury to draw the circumstantial inference that the defendant was generally a liar; it would demonstrate directly that the defendant had lied in his trial testimony.  We recognized this distinction when, in upholding the trial court's decision to admit the extrinsic evidence, we wrote that the rebuttal evidence "did not attack the defendant's general credibility, but rather the truthfulness of his testimony."  Id. at 167.

For the purposes of this appeal, we assume that Vandebogart applies when, as in this case, a criminal defendant seeks to rebut with extrinsic evidence a victim's testimony on cross-examination about a collateral issue.  Compare Cannon, 146 N.H. at 566-67 (citing Vandebogart and upholding the trial court's decision to limit a witness's testimony offered to rebut the victim's testimony on cross-examination as to what appears to have been a collateral issue because the defendant failed to demonstrate that the trial court had unsustainably exercised its discretion), with State v. Kelly, 160 N.H. 190, 202-03 (2010) (not citing Vandebogart and concluding that defense counsel was not entitled to impeach complainant's testimony with extrinsic evidence demonstrating that her testimony on cross-examination was false).  We also assume without deciding that the witness's testimony concerned a collateral matter because the defendant does not argue otherwise.

### 3.  Application to this Case

The defendant contends that, once the victim denied threatening to tell the police that the witness sexually assaulted her, "the defense had the right, under Vandebogart, to present extrinsic evidence to impeach that denial."  We disagree that Vandebogart establishes that a party has a "right" to present extrinsic evidence to impeach a witness's testimony on cross-examination.  In that case, we merely upheld a trial court's discretionary decision to allow such impeachment.  See Vandebogart, 139 N.H. at 167.

Moreover, this case is readily distinguishable from Vandebogart.  In contrast to the cross-examination of the defendant in Vandebogart, the evidence which the defendant sought to elicit from the victim falls squarely within the terms of Rule 608(b).  The defendant cross-examined the victim about what he claimed was her threat to falsely accuse the witness of sexually assaulting her for the purpose of attacking her general credibility by showing that she had a propensity to lie.  The defense theory was that, because the victim was a liar when she allegedly threatened to accuse the witness of sexual assault, she was also a liar when she alleged, "in great detail," that the defendant had sexually assaulted her.  Ellsworth, 142 N.H. at 717.  Although the defendant argues that the purpose of eliciting the victim's testimony about the witness incident was to demonstrate her "motive" to fabricate allegations of

10

sexual assault, the probative value of that evidence "necessarily involves the victim's alleged bad character and predisposition or propensity to lie." Id.

The trial court acted within its discretion in permitting the defendant to pursue such cross-examination. But when the victim denied making the prior threat, Rule 608(b)'s prohibition came into play and prohibited the defendant from introducing extrinsic evidence to contradict her testimony. See Perez-Perez, 72 F.3d at 227. As noted previously, were we to permit the introduction of extrinsic evidence to contradict the victim's testimony about a matter inquired into on cross-examination only because of its bearing on her general credibility for truthfulness, we would render Rule 608(b) a nullity. This we refuse to do.

In this case, the trial court reasonably could have decided that, because the defendant was allowed to cross-examine the victim about the witness incident so as to attack her general character for untruthfulness, it would have undermined the purposes of Rule 608(b) to allow him also to use extrinsic evidence to impeach that testimony. See C. Wright & V. Gold, 28 Federal Practice and Procedure § 6119, at 127 (2012) (observing that "[t]he admissibility of misconduct evidence to contradict can be entwined logically with the admissibility of such evidence to prove untruthfulness," so that when "a witness is questioned about alleged misconduct probative of untruthfulness and . . . the witness denies the misconduct[,] . . . [i]f the extrinsic evidence is freely admissible to contradict, the purpose of Rule 608(b) is utterly destroyed").

C.  Motion to Vacate Verdict and for a New Trial

We next consider the defendant's assertion that the trial court erred when it denied his motion to vacate the jury's verdict and for a new trial. The defendant argues that "[h]aving initially ruled that the defense could elicit [the witness's] testimony subject to specified conditions," the court committed reversible error when it then "retract[ed] that permission" after the defense had relied upon it. (Underlining omitted.) He asserts that the court's correction of its initial ruling that the Ellsworth exception applies to the witness's testimony meant that his counsel was unable to deliver on the promise he made to the jury during his opening statement to produce the witness testimony. He contends that the trial court's so-called "about-face violated [his] rights to due process and a fair trial, guaranteed by" Part I, Article 15 of the New Hampshire Constitution and "the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution."

We decline to address the merits of the defendant's argument, in part, because he has not sufficiently developed it for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003). For instance, he does not explain how the trial court's ultimate decision to correct its earlier, erroneous, provisional

11

ruling constitutes a deprivation of due process.  See Merrimack Valley Wood Prods. v. Near, 152 N.H. 192, 203 (2005) (explaining that "[t]here can be no question of the inherent power of the [trial court] to review its own proceedings to correct error or prevent injustice" (quotation omitted)).  We note that the two cases upon which the defendant relies in his brief are not due process cases and are factually distinguishable.  See State v. Demond-Surace, 162 N.H. 17 (2011) (concerning whether defendant was prejudiced by prosecutor's improper comment); United States v. Smith, 629 F.2d 650 (10th Cir. 1980) (concerning whether the trial court committed reversible error by failing to comply with a federal procedural rule requiring it to inform counsel of its proposed action upon jury instruction requests before counsel argued to the jury).

Moreover, as the appealing party, the defendant has the burden of demonstrating that the trial court committed reversible error when it corrected its earlier, provisional, erroneous ruling that the Ellsworth exception applied to the witness testimony.  See Gallo v. Traina, 166 N.H. 737, 740 (2014).  Based upon our review of the trial court's ruling on the defendant's motion to vacate the jury verdict and for a new trial, the defendant's challenges to it, the record submitted on appeal, and the applicable law, we conclude that the defendant has not demonstrated reversible error.  See id.

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

12