# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0459, <u>State of New Hampshire v. Robert Chambers</u>, the court on January 8, 2019, issued the following order:**

The defendant, Robert Chambers, appeals his convictions for aggravated felonious sexual assault (AFSA). <u>See</u> RSA 632-A:2 (1996) (amended 1997, 1998, 1999, 2003, 2008, 2012, 2014, 2017, 2018). He argues that the Trial Court (<u>Ruoff</u>, J.) erred by: (1) excluding evidence of the victim's disclosure of a prior sexual assault and her participation in counseling; (2) admitting the contents of a recorded phone call between the victim and the defendant; and (3) failing to disclose the victim's counseling records. We affirm.

The defendant appeals his convictions on three counts of AFSA-pattern sexual assault; the convictions are based on assaults that he committed against the victim between 1994 and 2000. The victim was born in 1985. The defendant met the victim's mother when the victim was five or six years old. In 1992, the defendant and the victim's mother had a son and married. The defendant lived with the victim, her mother, and the son from 1992 to 2001. The victim testified that the defendant began sexually assaulting her when she was seven years old. The assaults progressed to oral sex, and then sexual intercourse when she was twelve years old. The assaults continued through the victim's high school years and while she was home during college break.

The victim's mother testified that when she came home during the day, she occasionally found the defendant napping, with the victim in bed with him. She testified that she was concerned, and told the defendant that "it didn't look right." She also asked the victim about it. Both told her that there was "nothing going on." The victim's mother also testified that she was "not surprised" when she later learned of the allegations against the defendant.

At trial, the victim testified that the first time she threatened to tell her mother about the abuse, the defendant gave her several reasons why she should not do so:

> He said that he was a police chief and that was my word against his. And people would believe him and not me. There were -- he also mentioned that they would take me out to go live in a group home. And he said, little girls got raped with broomsticks there and said that he didn't -- that I didn't want that to happen to me.

The victim was then asked why she decided against telling her mother, and she responded: "I was scared." Thereafter she testified that she did not disclose the abuse at a later date because she was "scared" and "ashamed." She further testified that she "was terrified. I was so alone. And I didn't want to be taken out away from my mom and my little brother. And I didn't think anyone would believe me. He had said multiple times that no one would believe me, and that it was consensual." She testified that the assaults continued when she returned during summer break in college. Although she acknowledged that she was in counseling in college, she explained that she did not report the assaults at this time because "I was very afraid of the person that he is. I was afraid for my life."

Prior to trial, the State filed a motion in limine to exclude evidence of "a potential sexual assault" of the victim by her biological father. The State alleged that, during a deposition of the victim's mother, "reference was made to counseling records of [the victim]" from "when she was approximately 6 years old. The counseling was allegedly in regards to a potential sexual assault by [the victim]'s biological father." Describing the report as a "touching allegation," the State argued that it was irrelevant on several grounds.

In his assented-to motion for in camera review of the records, the defendant argued that the records were "material and potentially exculpatory" to confirm that the victim, when younger, had accused her father of having sexually assaulted her.

After reviewing the counseling records, the trial court concluded that none of the records "contain material that is exculpatory or even favorable to the defense in this case." The court also ruled that "any probative value of evidence of prior sexual abuse (or as the state styles it: prior sexual conduct by [the victim]) between [the victim] and her biological father is substantially outweighed by the danger of unfair prejudice." The court further found that evidence of the alleged earlier abuse would not be probative on the issue of the victim's credibility, and that its admission would result in a trial within a trial and cause significant confusion of the issues before the jury. See N.H.R. Ev. 403.

The defendant filed a motion to reconsider, arguing that the court had "misapprehended the relevancy of this evidence." He argued that the support that the victim would have received in counseling was relevant to "her claims that she was scared and embarrassed to tell her mother [about the defendant's assaults] and worried that no one would believe her." He also argued that the victim's mother's reaction to the victim's "disclosure" about her biological father,[1] that she immediately entered her into counseling, was in contrast to

---

[1] For the purposes of this appeal, we will assume that the victim received counseling services beginning sometime around 1990 as a result of her disclosure to her mother that her birth father had touched her inappropriately.

her reaction to feeling that something inappropriate was happening between the defendant and the victim when she found them sleeping together in the master bedroom on multiple occasions and yet allowed the victim to continue living with the defendant when the mother and defendant separated.

The trial court released three pages of the victim's counseling records, subject to a protective order, finding that "they relate to what appear to be comments [the victim] made about the defendant in 1992." By separate order, the trial court reaffirmed its earlier ruling that evidence of the sexual abuse of the victim was inadmissible.

Following a jury trial, the defendant was convicted and filed this appeal. He first argues that evidence of the victim's earlier report that she had been sexually abused by her biological father and her resultant receipt of counseling was relevant for two reasons: (1) because it would undermine her assertion that she did not disclose the defendant's assaults because she did not expect to be believed; and (2) because it would discredit her mother's "expected testimony that she witnessed signs of sexual misconduct involving [the defendant and the victim]."

A trial court has broad discretion to determine the scope of cross-examination and the admissibility of evidence. State v. Aldrich, 169 N.H. 345, 348 (2016). We review the court's decision on these issues to determine whether its exercise of discretion is sustainable. State v. Letarte, 169 N.H. 455, 461 (2016). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. Id. When we apply our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. Id. Even if we assume, without deciding, that the trial court erred in its evidentiary ruling, it remains the defendant's burden on appeal to demonstrate that the "trial court's error was clearly unreasonable to the prejudice of his case." State v. Morrill, 154 N.H. 547, 552 (2006). Having reviewed the record before us, we conclude that the defendant has not carried his burden.

The defendant testified at trial and denied that the charged assaults had occurred — he specifically testified that he did not sexually assault the victim. He was able to extensively cross-examine the victim about her acts of affection toward him and her continuing contact with him after she left home, thereby challenging the veracity of both her disclosures and her asserted reasons for her "delay" in disclosing them.

Significantly, there were substantial differences between the alleged inappropriate touching of the victim by her biological father and the assaults committed by the defendant. These differences diminish any probative value of the excluded evidence. Here, the defendant had served as a police chief for six

3

or seven years and repeatedly told the victim that people would believe him and not her, implying that his status as a police chief would cause others to believe him. He warned her that, if she reported the assaults, she would be forced to live in a group home. The victim testified that her failure to report the defendant's assaults was based upon her fear of his status and power. His threat that she would be removed from the family home and placed in a group home where she would be exposed to potential violent physical abuse is distinguishable from any disclosure that she made at the age of five when, from her perspective, her biological father was no longer part of her life. Nothing in the record indicates that the victim's biological father held any similar status or voiced any threats that would lead the victim to doubt that she would be believed or be punished for her disclosure.

Moreover, the excluded evidence indicated that after the victim's biological father's alleged acts were exposed, her mother took action by enrolling her in counseling. Here, after the mother found the defendant sleeping in bed with the victim on multiple occasions during the day, she asked her daughter about it. The abuse was not disclosed as the victim denied that anything "was going on." Although the mother said that she did not confront the defendant about the activity, she admitted at trial that she told him that "it didn't look right." Thus, in both instances, the mother acted upon the information available to her. In response to the victim's mother's testimony at trial that she "was concerned" about finding the victim in bed with the defendant, defense counsel elicited conflicting testimony on cross-examination that when she left the marital home, she allowed the victim to continue living there with the defendant and frequently visited her but did not require the victim to move with her to the mother's new residence.

Given the dissimilarities between the circumstances involving the victim's biological father and those in this case, and the cross-examination of the victim and her mother that the defendant was able to pursue, we are not persuaded that the defendant has carried his burden of demonstrating on appeal that any error by the trial court was clearly unreasonable to the prejudice of his case.

We next address the defendant's challenge to the admissibility of a recorded telephone call. The defendant unsuccessfully moved to suppress, inter alia, a one-party intercept telephone call between himself and the victim. RSA 570-A:2, II(d) (2001) authorizes law enforcement to intercept a communication with the consent of one party thereto if, inter alia, the authorizing official determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception. In this case, a previous telephone call between the victim and the defendant, in which the victim brought up an alleged sexual encounter with the defendant, resulted in the defendant ending the call, indicating that he needed to go to the bathroom. Two weeks later, the police sought authorization to record the call

4

at issue, after the victim reported receiving by text message a photograph from the defendant. The defendant argues that there was no reasonable suspicion that evidence of criminal conduct would be derived from the second call.

Our review of the trial court's order on a motion to suppress is de novo, except as to any controlling facts determined by the trial court. State v. Corrado, 154 N.H. 43, 44 (2006). Reasonable suspicion exists under RSA 570-A:2, II(d) when specific and articulable facts taken together with rational inferences from those facts lead the authorizing official to believe that evidence of criminal conduct will be derived from an interception. Id. at 45. To determine whether reasonable suspicion exists, we look to the totality of the circumstances. Id.

Here, the State notes that when the victim attempted to address the sexual assaults with the defendant during the first call, he ended the call because he had to go to the bathroom. Thus, the State argues, it was not clear from that conversation that there was no reason to believe that a second call would produce evidence of a crime. We agree. Given the victim's allegations against the defendant and the manner in which the first call ended, we conclude that there existed reasonable suspicion that evidence of criminal conduct would be derived from the second call.

Finally, the defendant seeks review of the trial court's decision not to release certain counseling records that it reviewed in camera. The defendant requests that we "review the withheld documents to determine whether the court erred in concluding that they did not contain material that was essential and reasonably necessary to [his] defense at trial." We review the trial court's decision on the management of discovery to determine whether its discretionary ruling is sustainable. State v. Aldrich, 169 N.H. at 354. Based upon our review of the records, we conclude that the trial court's ruling is sustainable.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**

5